# Kennedy, Committee of Mahon, *versus* Johnston.

65  451
137  629

65  451
199  642

1. The committee of a lunatic widow cannot without the sanction of the court elect for her not to take under her husband's will.

2. The leaning of the law in absence of election of dower, is to the will.

3. The choice presented is one for judicious consideration to be exercised in view of the circumstances.

4. The right is personal, or if the widow be incompetent, it is to be exercised by the court which has charge of her estate.

5. The committee of a lunatic exercises all his powers under the Act of June 13th 1836, which gives him no authority to elect for a widow ward.

6. A committee has power to apply the income only of a lunatic's estate to the payment of his debts and the support of him and his family.

7. If the income be insufficient, the principal cannot be used or the real estate converted without the direction of the court.

8. The committee must apply to the Court of Common Pleas for leave to elect, and then record the election in the Orphans' Court.

May 11th 1870.    Before Thompson, C. J., Read, Agnew and Sharswood, JJ.

Error to the Court of Common Pleas of *Franklin county:* No. 83, to May Term 1870.

Max Kennedy, committee, &c., of Sally Mahon, a lunatic, on the 15th of February 1868, instituted an action of dower against George Johnston, and claimed dower for his ward as the widow of Robert Mahon of a tract of 240 acres of land, &c.

Johnston pleaded, 1. To the jurisdiction of the court, and that the jurisdiction was in the Orphans' Court; 2. That Sally Mahon was never seised of dower in said tract; 4. That Robert Mahon, by his will proved May 13th 1845, devised to her one-third of the income of his farm to be paid by his son David out of the lands devised him, and that she elected to take under the will; 5. That in lieu of her dower and as a compromise of the amount to be paid her annually by David, she agreed with him before the 1st of November 1850, when he conveyed the land to the defendant, to release her dower and her rights under the will in consideration of the annual payment of $198, which had been regularly paid by David whilst he owned the farm and by the defendant since; 6. The Statute of Limitations.

The plaintiff gave in evidence the will of Robert Mahon, proved May 13th 1845, containing the following clauses :—

"First. I give and devise to my wife Sally the one-third of the income of my farm, that is to say, the one-third of the interest of my farm during her lifetime. * * * Sixthly. I give and devise to my son David Mahon my farm that I now reside on, with the exceptions hereafter mentioned. * * * Seventhly. I give and devise to my son Arch. Mahon one hundred acres of land off the north corner of my farm. * * * And my son Arch. has to pay or give to my wife Sally her lifetime the third of the income of the same hundred acres. * * * My son David has to give the third of the income of his land, or lands, that he is bequeathed, he has to pay it to my wife Sally during her lifetime."

Also deed from David to the defendant dated November 1st 1850, for the land devised: also proceedings in lunacy on Sally Mahon, confirmed August 12th 1867.   The finding was that she had been a lunatic for twenty years before August 2d 1867 : also

[Kennedy v. Johnston.]

the value of the land. The defendant gave evidence that about May 28th 1850, Mrs. Mahon gave Jacob Heck a power of attorney, to settle with David the amount which should be paid to her annually in lieu of her interest under her husband's will, and on that day Heck as her attorney in fact and David by articles of that date agreed that David should pay her $264 per annum in lieu of her dower in the land devised to David.

The plaintiffs in rebuttal gave evidence of Mrs. Mahon's incapacity at and about the time she made the power of attorney.

The plaintiff submitted these points, which were denied by Rowe, J. :—

1. Inasmuch as it is admitted by the defendant, that Sally Mahon was the lawful wife of Robert Mahon, at the death of the latter; that he died in May 1845; that he died seised of the premises described in the *narr.*, the plaintiff is entitled to recover dower in the said premises. Also one-third of the annual profits of the land from the death of her husband in May 1845 to the present. And also damages for the detention of her dower during said period and costs.

3. If the said Sally Mahon was destitute of such memory and judgment as to render her incapable of *understanding and acting* in the ordinary affairs of life, from the death of her husband hitherto, then she could not make an election, as to how she would take the estate, whether by will or otherwise. And the law, therefore, takes that view of the case that will be the most advantageous to her, and plaintiff must have the verdict.

The defendant's 1st point was:—

1. If Sally Mahon was a lunatic and of unsound mind in May 1845, when her husband died, and by reason of such mental unsoundness incapable of making an election between the provision made for her by her husband in his will, and her dower at common law, her committee has no right in law to make an election for her, by bringing this action of dower, on the 5th day of February, A. D. 1868. And in this aspect of the case, the verdict must be for the defendant.

This was affirmed. These three points raise the question decided by the Supreme Court.

The verdict was for the defendant.

The plaintiff took a writ of error, assigning the answers to the points for error.

*F. W. Kimmell* (with whom were *J. R. Orr* and *Kennedy & Stewart*), for plaintiff in error.

*J. McD. Sharpe* (with whom were *Stumbaugh & Gehr*), for defendant in error.—A committee of a widow cannot elect that his ward shall not take under her husband's will. His powers are limited by

[Kennedy v. Johnston.]

the statute: Act of June 13th 1836, § 15 *et seq.*, Pamph. L. 596, Purd. 682, pl. 22, &c.; Hehn v. Hehn, 11 Harris 415; Guthrie's Appeal, 4 Id. 321. The right of election is personal: Boone v. Boone, 3 Har. & McH. 93; Collins v. Carman, 5 Md. 503; Lewis v. Lewis, 7 Ired. 72; Merrill v. Emery, 10 Pick. 507. If the widow is under disability the court will elect for her: Pulteney v. Darlington, 2 Ves. Jr. 560; Roper on Husband and Wife 571 note; Noys v. Mordaunt, 2 Vernon 581; Streatfield v. Streatfield, Cas. temp. Talbot 176; 1 Leading Cases in Equity (White & Tudor), Hare & Wallace's Notes 271, &c.; Boughton v. Boughton, 2 Ves. 12; Bar v. Bar, 3 Bro. P. C. 173; Chetwynd v. Fleetwood, 1 Id.; Vane v. Lord Dungannon, 2 S. & L. 133; Davis v. Page, 9 Ves. 350; Ebington v. Ebington, 5 Madd. 117; Wilson v. Lord John Townshend, 2 Ves. Jun. 693; Goodwyn v. Goodwyn, 1 Ves. Sen. 228; Bigland v. Huddleston, 3 Bro. C. C. 285, note; Gretton v. Howard, 1 Swanst. 413; Ashburnham v. Ashburnham, 13 Jur. 1111; Robertson v. Stephens, 1 Iredell's Equity 247; McQueen v. McQueen, 2 Jones Eq. 16; Tiernan v. Roland, 3 Harris 430; Addison v. Bowie, 2 Bland 606.

The opinion of the court was delivered, July 7th 1870, by

AGNEW, J.—Robert Mahon, the husband of Sally Mahon, died in May 1845, and she was not declared a lunatic until August 1867. During all this interval she took under the will of her husband the provisions made for her. Had she been sane there could be no doubt that the acts of acceptance under the will, as given in evidence, would have been deemed an election *in pais* and barred her dower: Cauffman v. Cauffman, 17 S. & R. 16; Light v. Light, 9 Harris 407; Bradford v. Kents, 7 Wright 474. But if she were insane from the period of her husband's death, of which there was some evidence, she was without capacity to elect, and this raises the only question we need discuss—the power of Dr. Kennedy, as her committee, to elect for her without the sanction of the Court of Common Pleas. In view of the doctrine of election as administered in equity, and of the powers conferred on the committee of a lunatic, which are entirely statutory, he had not the power without application to the court. Under the 11th section of the Act of April 1833, relating to wills, a devise or bequest by a husband to his wife, of any portion of his estate or property, is deemed and taken to be in lieu of her dower in his real estate, saving her right to elect her dower, which means at common law: Shaffer v. Shaffer, 14 Wright 394. She is therefore put to her election between the provisions of the will and her dower, while her default to appear and elect under the Act of 29th March 1832, § 35, Pamph. L. 200, after citation served, is deemed to be an acceptance of the provision of the will, and bars dower. The evident leaning of the law, in the absence of an election of

dower, is toward the will. The choice thus presented by the law is one for a judicious consideration—one of judgment to be exercised upon a view of the circumstances. The right is also personal, to be exercised by the widow herself, or if she be incompetent because of unsoundness of mind, by the court which has the care of her estate, unless there be a statutory power committed to the committee. In Maryland and North Carolina, it has been held that her right of election is personal and can be exercised only by herself: 1 Washb. on Real Prop. 272*, citing Boone v. Boone, 3 Harris and McHenry 93; Collins v. Carman, 5 Md. 503; Lewis v. Lewis, 7 Iredell 72. In England, in cases of election generally, the jurisdiction is exercised by the Court of Chancery, which has also the care of the persons and estates of persons *non compotes mentis:* 2 Maddock's Ch. 48 to 60; 2 Story's Eq., §§ 1075, 1077, 1080, 1097; Cauffman v. Cauffman, 17 S. & R. 24, 25, 26. In the case of infants and married women, the Court of Chancery, when necessary, will refer the matter to a master to inquire as to what would be most beneficial to the infant or *feme covert,* in order to make the proper decree. See authorities collected in note, White & Tudor's Leading Cases in Equity, p. 272. Also note to Lady Cavan v. Pulteney, 2 Ves. Jr. 563, Sumner's Ed.

In this state the 5th Article of the Constitution, § 6, confers on the Court of Common Pleas the power of a court of chancery, so far as relates (*inter alia*) to the persons and estates of those who are *non compotes mentis.* The Act of 13th June, 1836, relating to lunatics and habitual drunkards, Pamph. L. 592, was passed to carry out this provision of the Constitution. It is under this act the committee derives all his powers, and unless the power to elect can be found in the law or be fairly inferred from its general terms, it does not exist. It is obvious, there is no such power conferred in words general or special, and there appears to be nothing in the character and nature of the duties enjoined from which the power can be drawn. When properly qualified the law confers on the committee the management of the real and personal estate of the lunatic with power to apply the income only to the payment of his debts, and the support of himself and his family. But beyond this the committee cannot go in disposing of the estate without the aid or sanction of the court. If the income be insufficient the principal cannot be used, or the real estate converted without the direction of the court. To the court belongs the power of making orders touching the care and custody of the person, and the management and safekeeping of the estate of the lunatic, necessary and proper for the purpose. The election of one of two things when only one can be chosen for the lunatic, is undoubtedly a judicial not a ministerial act, and belongs to the court and not to the committee. The act of election settles the

title, and makes that absolute which was before uncertain and optional. Where the title may attach to either of two subjects of property by election, it requires a comparison of benefits, and a choice to settle the title upon one of them absolutely. This the committee undoubtedly cannot do from the provision of a mere power of management, for that implies a title already to the thing to be managed, and for the same reason the power to elect does not flow from a power to sue for and recover the property of a lunatic. It also implies a pre-existing title in the lunatic; while the election is required to be made before title absolutely accrues. It was therefore not in the power of the committee of his own motion to relinquish the provision made for the wife in the will of the husband, and cast himself upon the dower. It was his duty to apply to the Court of Common Pleas having jurisdiction over the person and estate of the lunatic for leave to elect the dower, which the court would grant only on due consideration of the advantages and disadvantages of the choice. After such a decree he could then proceed to have a record of his election made in the Orphans' Court, under the provisions of the Act of 29th of March 1832, and be in a position to recover the dower if denied to him.

This substantially disposes of all of the errors assigned, and the judgment is affirmed.