# In re Bringhurst.   Fidelity Trust Company's Appeal.

*Guardian and ward—Weak-minded persons—Husband and wife —Election to take against will of husband—Guardian's petition— Refusal—Judicial discretion.*

1. Where a widow who has not elected to take against her husband's will becomes weak in mind, necessitating the submission of the matter of such election to a court of chancery to act on her behalf, the leaning of the law is toward the will.

2. The guardian of a person weak in mind petitioned for leave to take against the will of its ward's deceased husband. It appeared that the ward had been confined in an asylum before her husband's death, that the husband gave the residue of his estate in trust to pay one-third of the income therefrom to his widow for life, the remaining two-thirds to his three daughters for life, on the death of his wife the whole net income to his three daughters for life, and directed that upon their deaths respectively, the principal of the share from which the one so dying had received the income should be paid to her child or children then living and the issue of deceased children, but that if any of his daughters should die without leaving children, or issue, the share of the one so dying should increase the trust estates of the survivors. One of the daughters was married and had a minor son, the other two daughters were married and without issue, but each had adopted a child. It appeared that the income which the wife would receive was ample for her comfortable maintenance and that the petition was presented in order that the adopted children of two of the daughters might receive a portion of the estate. *Held,* the lower court did not err in refusing the petition.

Argued March 31, 1915. Appeal, No. 484, Jan. T., 1914, by Fidelity Trust Company, guardian of the estate of Mary C. Bringhurst, a person weak in mind, from decree of C. P. No. 2, Philadelphia Co., Dec. T., 1912, No. 1085, refusing leave to take against the will of Robert R. Bringhurst, deceased, In re Mary C. Bringhurst, a person weak in mind. Before MESTREZAT, POTTER, ELKIN, MOSCHZISKER and FRAZER, JJ. Affirmed.

Petition by the guardian of a person weak in mind for leave to take against the will of its ward's deceased husband.

Exceptions to the report of Chester N. Farr, Esq., Referee. Before SULZBERGER, J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. The Fidelity Trust Company, guardian, appealed.

*Error assigned* was in dismissing the exceptions.

*John G. Johnson,* with him *Benjamin O. Frick,* for appellant.

*Edward Wiener,* for Albert E. Chevalier, guardian of Robert Bringhurst Wittenberg, a minor, appellee.

*Charles E. Lex* filed a paper book for the Pennsylvania Company for Insurance on Lives and Granting Annuities, executors of the last will and testament of Robert R. Bringhurst, deceased, appellee.

OPINION BY MR. JUSTICE MOSCHZISKER, May 26, 1915:

The guardian of Mary C. Bringhurst, a person weak in mind, filed a petition in the court below praying for leave to take against the will of its ward's deceased husband; permission so to do was refused, and the guardian has appealed.

The petition averred the appointment of the guardian;

that Mary C. Bringhurst was the widow of Robert R. Bringhurst, who died August 3, 1912, leaving a will and codicils thereto, wherein he appointed the Pennsylvania Company for Insurance on Lives and Granting Annuities executor and trustee; that the testator, after certain bequests, gave the residue of his estate to his executor, in trust, to pay a third part of the income therefrom to his widow for life, and the remaining two-thirds to his three daughters for life; that, on the death of his wife, he bequeathed the whole net income from his residuary estate to his three daughters for life, and directed that upon their deaths, respectively, the principal of the share from which one dying had been receiving income should be paid to her child or children then living and the issue of such as might then be deceased, provided that, if any of his daughters should die without leaving children or issue, the share of each one so dying was to increase the trust estates of the survivors; that the personal estate of Robert R. Bringhurst, deceased, was appraised at $172,960.17, and the real estate was assessed at $75,770; that the income which Mary C. Bringhurst would receive was approximately $2,500 a year; that all three daughters named in the will of Robert R. Bringhurst, deceased, were living, of full age, and sui juris; that one of said daughters was married and had a minor son; that the other two daughters were both married, without issue, but each had adopted a child; "that your petitioner is informed it was the intention of the testator to provide for said above named adopted children, but that under the terms of said will, no adopted child of any of said above named daughters can take any interest whatever in said estate"; finally, that the daughters had requested the petitioner to elect to take against the will, "so that upon the death of the said Mary C. Bringhurst, such share of said decedent's estate as she shall take under said election shall pass by the intestate laws of the Commonwealth to said daughters absolutely, and in this manner said adopted children will be pro-

vided for." All the daughters, together with their respective husbands, and the guardian of the testator's grandson, joined in the prayer of the petition; but subsequently the guardian of the minor withdrew as a party to the petition and opposed the prayer thereof.

The petition was sent to a referee, who made an elaborate report, in the course of which he found that the widow was 58 years old; that she had been confined in the Friends' Asylum for the Insane at Frankford, Philadelphia, since 1888, "her mania being incurable and of a recurrent chronic type, such as to subject her to attacks of maniacal excitement which came on irregularly, recurring at the longest at intervals of a few weeks apart"; that, "apart from these attacks her condition is normal"; that "during these normal intervals, which, of course, are by far the greater portion of her time, she is thoroughly appreciative of the comforts of existence"; that "the lowest income which would be received by Mary C. Bringhurst, if she elected to take under the will, may be estimated at $3,235," and "the highest income......from the estate which she might take, if she elected to take against the will, may be estimated at $3,956"; finally, that "the obvious purpose of the petitioners was to secure by an election of the widow to take against the will, an estate which would ultimately descend to the adopted children." After finding a number of relevant underlying facts, the referee concluded that the income which Mary C. Bringhurst would derive from her share of the testator's estate under his will was amply sufficient properly to provide for her comfortable maintenance; that, such being the case, the fact that the adopted children of two of the testator's daughters would not inherit any of his property unless the prayer of the petition were granted, could not be considered; he recommended that the petition be refused.

When the report of the referee was presented to the court below for final action, before entering a decree,

it suggested to the three children of testator that, since the will provided any income not required for the proper maintenance and support of Mrs. Bringhurst should be divided among his daughters, they should execute a writing agreeing that a full one-third of the income from the testator's residuary estate should go to the widow for life. After such an agreement was filed of record, the court entered a decree reciting that, whereas "all the children......had agreed that the......trustee under the will of Robert R. Bringhurst, deceased, should pay to the guardian of the said Mary C. Bringhurst a full one-third of the net income from the residuary estate......," it was, upon consideration thereof, ordered adjudged and decreed that the petition of the widow's guardian to take against the will of her deceased husband be dismissed.

The appellant attacks several of the findings of the referee and the final decree entered by the court below. While we realize that some of the underlying findings, involving calculations and estimates of the value of principal and income, may not be precisely correct, yet, we are not convinced of such substantial error as would justify a reversal, nor of an abuse of discretion in refusing permission to take against the will. There does not seem to be any very enlightening authority in Pennsylvania upon the subject before us, but Kennedy, Committee of Mahon, v. Johnston, 65 Pa. 451, while differing on its facts from the case at bar, contains relevant discussion which sheds some light upon the principles here involved. Speaking by Mr. Justice AGNEW, we there said that, where a widow who had not elected to take against her husband's will became weak in mind, necessitating the submission of the matter of such election to a Court of Chancery to act on her behalf, "the evident leaning of the law in the absence of an election of dower is toward the will," adding, "The election of one of two things, when only one can be chosen for the lunatic, is undoubtedly a judicial, not a ministerial act......; the

choice thus presented by the law is one for a judicious consideration—one of judgment to be exercised upon a view of the circumstances......by the court which has the care of her estate......," giving due consideration to all the "advantages and disadvantages of the choice." Several other cases are cited, among which Penhallow v. Kimball, 61 N. H. 596; Van Steenwyck v. Washburn, 59 Wis. 483; Robinson's Est., 93 N. W. Repr. 314; Ex parte Chumley, 1 Vesey Jr. 296; In re Connor, 49 L. R. A. (n. s.) 1108, may be mentioned as containing more or less relevant discussion upon the general subject in hand.

We agree that in cases of this character the first consideration is the welfare of the widow, and that the court is bound always to keep this in mind; but where, as here, the wife was confined in an asylum before the time of her husband's death, and he provided for her with a full understanding of the circumstances, furthermore, where it is found that the income which she will receive under the will is amply sufficient properly to provide for her comfortable maintenance and support, and after her decease the property is eventually to become vested in her grandchildren, we cannot say that, where the avowed purpose is to divert part of the property away from these grandchildren to the adopted children of certain of the testator's daughters, the court abused its discretion in refusing permission to take against the will, particularly where the widow, though possessed of long lucid intervals, during which "her condition is normal," has not, so far as the record shows, expressed any personal desire in the matter.

It is evident from the referee's report that the actual income which eventually will be received by the widow probably will be increased by several hundred dollars per annum over the stated estimate; finally, the record indicates a proper intention on the part of the court below to see that as much of this income as may be essential for the comfortable maintenance and support of

the widow, and all of it if necessary, shall be so spent. On the whole, we are not convinced of reversible error.

The assignments are overruled and the decree is affirmed; the costs to be paid by the appellant.