## Brooke's Estate.

*Weak-minded person — Election by guardian to take against will of deceased spouse.*

1. The right to elect to take against the will of a deceased spouse is personal to the surviving spouse, and the heirs or next of kin of the deceased spouse are not within the benefit of the right.

2. Where a wife, who died without issue, made ample provision by will for the care and maintenance of her surviving husband, who was weak-minded and required institutional care, leaving him a substantial part of her personal estate absolutely, and a life interest in the remainder of it, with gifts over to members of her own family, a rule on his guardian by his next of kin to show cause why the guardian should not elect on his behalf to take against his wife's will was discharged, as the husband could derive no personal benefit from such election, and its only effect would be to divert one-half of her property from her own family to his next of kin.

Petition for rule on guardian of surviving spouse to show cause why guardian should not elect against will of deceased spouse. C. P. No. 2, Phila. Co., June T., 1920, No. 6782.

*J. S. Rhoads* and *J. M. Brinton*, for petitioner.

*Effingham B. Morris, Jr.*, for Girard Trust Company.

BARRATT, P. J., April 25, 1923.—This is a petition filed April 20, 1922, by Colonel William Brooke, son of a former wife, deceased, of General John R. Brooke, praying the court to direct a rule on the Girard Trust Company, guardian of the property of John R. Brooke, to show cause why the guardian should not, in its capacity as such guardian, file an election to take against the will of Mary Stearns Brooke, the second wife, deceased, of said John R. Brooke.

The recourse is to the court, first because the guardian is of an opinion adverse to the election, and chiefly because an election by the guardian or committee is ineffective except as authorized and confirmed by the court: Kennedy *v.* Johnston, 65 Pa. 451; In re Bringhurst, Fidelity Trust Co.'s Appeal, 250 Pa. 9; Com. ex rel, Baxstresser *v.* Rife, 50 Pa. C. C. Reps. 22.

On July 16, 1920, Mary S. Brooke, wife of General John R. Brooke, presented a petition to this court for the appointment of a guardian of the estate of the said General John R. Brooke, averring that the said John R. Brooke was aged eighty-two years, that he had become feeble-minded and unable to take care of his property, representing that he was a patient at the Friends'

3 D. & C.

Hospital in Frankford, Philadelphia, and suggesting the Girard Trust Company for the appointment.

After notice to the parties concerned, and after having heard testimony, General Brooke was adjudged incompetent as aforesaid and the Girard Trust Company was appointed guardian on Sept. 7, 1920.

John R. Brooke continues to be mentally defective. He is now eighty-four years of age, and he remains confined at the Friends' Asylum.

The present petitioner, Colonel William Brooke, is a son by the first wife, deceased.

General Brooke owns personal property of about $4000, consisting of cash on deposit; and as an officer on the retired list of the United States Army he receives $6000 per annum from the Government.

The will of Mary S. Brooke provides that her husband, General Brooke, shall receive approximately $15,000 in certain securities named, and the income from her entire estate during his life.

Her estate was derived largely from her father and mother, and little or none of it came from her husband. The petitioner, Colonel Brooke, is a stepson of Mary S. Brooke, and is not related by blood to her, nor, of course, to those from whom she received her property.

The said Mary S. Brooke, therefore, provided by her will that the property should be held in trust by the Girard Trust Company, respondent here, under trust, whereby General Brooke should receive the income for life, and whereby the property would go to the sisters of the testatrix for life, and to her nephews and nieces in remainder, thus continuing the estate, it may be said, in the hands of the direct descendants of those from whom it was derived.

Colonel Brooke, the petitioner, would compel the trust company to elect on behalf of General Brooke against the will of the latter's deceased wife, the said Mary S. Brooke, whereby the guardian would receive one-half of the wife's estate absolutely for General Brooke, instead of the income of the whole for his life only.

The documents filed show that there is another son of General Brooke by the former wife. This other son is Louis R. Brooke. He has not joined in the petition, although he lives in the neighborhood of Philadelphia, at Warwick, Chester County.

Colonel Brooke is stationed at Camp Custer, Michigan.

The foregoing review shows that the surviving husband is weak-minded and incompetent and under what is assuredly permanent care at the Friends' Hospital; that he is now eighty-four years of age; that he has an income from his pay as a retired officer of $6000 a year, besides such income as he receives from his wife's estate, which, if the will stands as to him, must be in the neighborhood of $5000 per annum, and besides his own $4000 on deposit, and besides the securities bequeathed by his wife, Mary S. Brooke, in value of about $15,000.

The maintenance charges at the hospital are $5000 per annum, so that his retired pay as an army officer exceeds the cost of his maintenance by about $1000 a year.

The foregoing shows ample provision for General Brooke. If, however, this is not so; if it is, on the contrary, the fact that the comfort and happiness of the surviving husband would be better promoted were the income available on his behalf greater, then there is additional and most substantial reason for denying the present petition; for the income from practically the whole estate is, of course, greater than the income from a half, even if for

Brooke's Estate.

life only while the half would be owned absolutely. With a small estate this might not be so, for in such a case an inroad on capital might be desirable; but the present case has no need of recourse to principal, for no need of the husband exists, or can exist, which the income under the will would fail to provide, so far as money can promote comfort.

If there is a thought that income is better for General Brooke, that income from the whole is a safer provision for him than can be a half possessed absolutely at a time when absolute ownership cannot help him.

It must always be remembered that the election is personal to the surviving spouse, and his heirs or next of kin are not within the benefit of any right to elect.

It is plain that the income from his wife's estate will be of no use to General Brooke, in all human probability, in view of his age and mental condition, and that it will merely accumulate for the benefit of those entitled to succeed to it at his death.

It does not appear what might have been the desire of General Brooke were his faculties keen as in his earlier years, as to an election to take against his wife's will. To assume that he would elect against her will is to assume that he would desire to benefit his sons at the expense of the blood relatives of his wife, to whom this petitioner, Colonel Brooke, was not related, and that he would be dissatisfied with his wife's disposition of her own estate, although she gave him $15,000 in securities and the benefit of all of the remainder of her estate for his life.

The surviving husband, General Brooke, now eighty-four years of age, has every want supplied. It cannot add to his comfort or enjoyment whether he receives for the few years remaining to him the income from the half or from the whole of his wife's estate; and the only ones benefited by an election against the will would be his sons, only one of whom is a party to this petition.

The court finds no advantage to be gained by the surviving husband by an election against the will, should such election be made.

The petitioner's counsel argues that an absolute right in a half of an estate is of more value than is the right to the income for life of the whole of an estate; and often this would be so, even in the case of a surviving spouse of unsound mind, as in Com. ex rel. Baxstresser v. Rife, 50 Pa. C. C. Reps. 22.

That cannot be said in the present case, where no increase in value can make for any benefit or enjoyment of the surviving husband (see Re Connor, 49 L. R. A. (N. S.) 1108) ; and especially where the election can be made only by doing violence to the wishes of the testatrix in favor of her own blood, descendants from those from whom the estate was derived by her. Presumably the husband, with every want of his own supplied, would not disappoint his wife's wishes under such circumstances.

Counsel have referred to Fidelity Trust Co.'s Appeal, 250 Pa. 9 (1912) ; Kennedy v. Johnson, 65 Pa. 451; Penhallow v. Kimball, 61 N. H. 596; Van Steenwyck v. Washburn, 59 Wis. 483; Robinson's Estate, 93 N. W. Repr. 314 (Minnesota) ; Ex parte Chumley, 1 Vesey, Jr., 296; In re Connor, 49 L. R. A. (N. S.) 1108; Com. v. Rife, 50 Pa. C. C. Reps. 22.

In Fidelity Trust Co.'s Appeal, 250 Pa. 9 (1915), Mr. Justice Moschzisker said: "We agree that in cases of this character the first consideration is the welfare of the widow, and that the court is bound always to keep this in mind; but where, as here, the wife was confined in an asylum before the time of her husband's death, and he provided for her with a full understanding of the circumstances; furthermore, where it is found that the income which she
3 D. & C.

Brooke's Estate.

will receive under the will is amply sufficient properly to provide for her comfortable maintenance and support, and, after her decease, the property is eventually to become vested in her grandchildren, we cannot say that, where the avowed purpose is to divert part of the property away from these grandchildren to the adopted children of certain of testator's daughters, the court abused its discretion in refusing permission to take against the will, particularly where the widow, though possessed of long lucid intervals, during which 'her condition is normal,' has not, so far as the record shows, expressed any personal desire in the matter."

In Robinson's Estate (Minnesota, 1903), 93 N. W. Repr. 314, Lewis, J., said in a case where the surviving spouse had become incompetent: "It is presumed that . . . the husband and wife had consulted with each other in regard to the disposition of the property, and it should be assumed that this will was made by the husband, if not after actual consultation with his wife, at least with a view of meeting her wishes in respect to the property and the family." And that court rejected the idea that merely values should be considered.

In Penhallow v. Kimball, 61 N. H. 596 (1882), Smith, J., said: "In making such election, the court is guided by considerations for the benefit of the lunatic, without regard to what the advantage may be to his heirs;" which agrees with Ex parte Chumley, 1 Vesey, Jr., 296 (1791), per Chancellor Thurlow.

In Van Steenwyck v. Washburn, 59 Wis. 483, the court said: "But upon what principles must the court proceed, or what considerations should be regarded, in making that election? The counsel for the respondents insist that the principle upon which an election is made by a court for a person under disability is to take that property which is the most valuable. That may afford a just and proper rule upon which to proceed in most cases, but we think that it would not be wise to act upon that principle in the case before us for these reasons: Governor Washburn, at the time of his death, owned large properties in the States of Wisconsin, Minnesota and Missouri. Had he died intestate, it is said his widow would have taken $600,000 or $700,000 as her share of his estate. It was assumed on the argument, and such doubtless is the fact, that the executors have set aside $5000 a year to be expended for her support. If this amount should be doubled or trebled, it is plain that the sums expended for her benefit would only be a small fraction of the share she would take by law. Mrs. Washburn was sixty-two years of age when this bill was filed. She has been insane, without lucid interval, for more than twenty-five years. There is no ground for a rational hope or expectation that she will ever be any better. Her mind has rested too long in the deep eclipse to justify or warrant such a hope. Medical science and skill long since exhausted their resources in efforts to cure her. Presumably she is incurably and hopelessly insane; and if she is ever restored to her reason, ever again clothed and in her right mind, to all human judgment that change must be brought about by an agency higher than that of man. She can have no conception of the value or use of money. If 'the wealth of Ormus and of Ind' were laid at her feet, she would not distinguish it from the dust. She cannot use money; she cannot manage it; its possession would be of no earthly benefit or advantage to her. Provision is made in the will for all her wants and necessities; for medical care or attendance; for all other care; in short, for every thing which will promote her comfort and physical health. Does not this meet the demands of every equitable requirement, so far as Mrs. Washburn is concerned? Further, cannot the court pay some regard to

the benevolent intentions of the testator towards his kindred by blood, and those having claims on his bounty, and to his munificent bequests for admirable and noble public charities, such as establishing a public library, an orphan asylum for young and destitute orphans; to the fact that he made a will, in and by which he disposed of his entire estate in a manner which seemed to him just and right? Is it permissible for the court to consider any of these matters, or must its discretion and judgment be limited to the sole inquiry, which property is the more valuable? It is evident if the court should elect what the law gives the widow in case of intestacy, that the intentions of the testator will in a measure be defeated. Such an election would greatly interfere with the scheme of the will. Defeating a will in any substantial provision is much like breaking it. It is defeating it *pro tanto*. The right to dispose of one's estate in accordance with his own wishes is a sacred right, which a court of equity will not disregard or destroy. The late Chief Justice, in Dodge *v.* Williams, 46 Wis. 70, says: 'Every one should have the same power to dispose of it by contract or by gift; and it is as much the duty of courts to uphold and enforce his will after death as to uphold and enforce his contracts made during life.' (Pages 90, 91.)

"It seems to us these considerations are entitled to some weight in making the election in this case. If the court can regard them, if it has any discretion in the matter, they should exert their due influence on our judgment. But if the court must elect for the widow the more valuable interest, without reference to any other consideration, then it really will exercise no discretion. But we think it is the clear duty of the court to exercise a sound discretion in the matter—to consider everything having a legitimate bearing on the election to be made. Consequently, acting on that principle, the court, in view of Mrs. Washburn's insane condition, in view of the liberal and ample provision made for her benefit in the will, and in consideration of all the facts, does elect for her that provision as being on the whole the best and most advantageous for for her interest and welfare."

Prayer of petition refused.