## Gantz Estate

*Clarke M. Seltzer,* for petitioner.

EHRGOOD, P. J., August 1, 1952.—This matter comes before the court upon a petition filed October 15, 1951, of the Peoples National Bank, of Lebanon, Pa., guardian of Kathryn Gantz, a weakminded person, for leave to authorize and empower the Peoples National Bank, guardian aforesaid, to file an election on behalf of Kathryn Gantz, as widow of J. Edward Gantz, deceased, to take against the will of decedent.

The First National Bank, Lebanon, Pa., as the duly qualified executor of J. Edward Gantz, deceased, for itself and on behalf of C. Irene Gantz and Charles Gantz, specific legatees and beneficiaries of the trust created under the will of decedent, did, for and on behalf of the other persons interested in the estate of decedent, file an answer to the petition, on October 19, 1951.

This court held a hearing on March 13, 1952, on the legal questions raised by the petition and answer filed thereto. From the admissions contained in the pleadings, the documentary evidence submitted, and the oral testimony given, the following facts, most of which are not controverted, are found.

J. Edward Gantz, decedent, and the husband of Kathryn Gantz, died on July 11, 1951, leaving a last will and testament dated June 29, 1950, in which he named the First National Bank of Lebanon, Pa., as the executor and trustee, and it was duly appointed as such executor by the Register of Wills of Lebanon County.

On August 15, 1951, a petition was presented in the Court of Common Pleas of Lebanon County, Pa., praying for the appointment of a guardian for Kathryn Gantz, alleging, inter alia, that Kathryn Gantz is weak of mind and has been confined to the Wernersville State Hospital at Wernersville, Pa., having been committed to that institution on December 10, 1948. On September 5, 1951, this court filed a decree adjudging Kathryn Gantz to be a feebleminded person, unable to take care of her property and estate, and appointed the Peoples National Bank, of Lebanon, as guardian of the estate of Kathryn Gantz.

At the hearing held March 13, 1952, at which testimony was produced by the parties in interest, it appears that Kathryn Gantz was admitted to the Wernersville State Hospital on December 10, 1948, at the

age of 54 years, that she is suffering from arterial sclerosis, described by two medical experts at the State hospital as being hardening of the arteries of the body and the veins and arteries that feed the brain. She is a chronic and incurable medical case and has no chance of medical recovery in the future. The patient has a life expectancy of not more than three years. This opinion was also confirmed at a meeting of the medical staff at the State hospital.

The appraised value of the real estate of decedent is $86,200 and the personal property, not specifically bequeathed, was appraised at $12,957.28. The total appraised value of the specifically bequeathed assets is $16,604.29, wherefore, the gross value of the estate is the sum of $115,762.07. The estimated debts and deductions are the sum of $12,500; the estimated Pennsylvania inheritance tax is $10,000; the estimated amount of Federal estate tax is $9,000 and the estimated value of net estate of decedent is approximately $67,600. Decedent died leaving no issue surviving, but leaving a widow, Kathryn Gantz, who had two children, Dorothy Seltzer and Christine Frick, by a previous marriage. The mother of Mrs. Gantz, Sarah Kreider, is still living. Decedent, in addition to being survived by his widow, is also survived by a mother, Ida Gantz; a sister, C. Irene Gantz, two brothers, Charles G. Gantz and Thomas Gantz, and a niece, Dorothy N. Gantz, who is the child of Thomas Gantz. The will of decedent, inter alia, after directing the payment of certain specific bequests and the payment by the executor of all estate, inheritance and succession taxes, and for the payment by his executor to the institution having custody of his wife, Kathryn Gantz, such sums of money as his executor, in its discretion, may deem necessary for the comfortable maintenance and support of his wife, directs in item 7 of the will that all of his real estate, other than the property sit-

uate at 781 Cumberland Street, Lebanon, Pa., shall be converted into cash by the executor, at either public or private sale; and further directs in item 9 of the will that the property situate at 781 Cumberland Street, Lebanon, Pa., together with the remainder of his estate, shall be transferred to the First National Bank, of Lebanon, Pa., in trust, inter alia:

"Item 12(a) During the lifetime of my wife, Kathryn Gantz, my said Trustee shall pay all or such part of the net income derived from said Trust Fund as my said Trustee may deem necessary for the comfortable maintenance and support of my said wife to the person or institution having the custody of my said wife. These payments for the maintenance and support of my said wife are to be made by my said Trustee at such times and intervals as my said Trustee may deem expedient. If my said Trustee deems that the net income of said Trust is not sufficient for the comfortable maintenance and support of my said wife, then my Trustee shall have the power to consume such part or all of the principal of said Trust Fund as may be necessary to provide for the comfortable maintenance and support of my said wife.

"(b) If the net income of the said Trust is not entirely consumed for the benefit of my said wife then I direct that my said Trustee shall pay, in quarterly-annual installments, the remainder of the said net income to my brother, Charles Gantz and my sister, C. Irene Gantz, in equal shares or to the survivor.

"(c) At the decease of my said wife I direct that my said Trustee shall pay out of said Trust Fund the funeral and burial expenses of my wife and shall pay for the erection of a suitable marker or tombstone on the grave of my said wife.

"(d) After the death of my said wife, the net income of the said Trust shall be paid to my brother, Charles Gantz and my sister, C. Irene Gantz, in equal

shares, or to the survivor, in quarter-annual installments.

"(e) After the death of the survivor of my said wife, Kathryn Gantz, my brother, Charles Gantz, and my sister, C. Irene Gantz, then I direct that the said Trust be terminated and that all of the real estate and personal property of said Trust shall be converted into cash and for that purpose I do hereby authorize and empower my said Trustee to sell all of my said real estate at public or private sale and to convey the same to the purchaser thereof without any obligation on the part of the purchaser to see to the proper application of the proceeds thereof.

"(f) After the termination of the said Trust and after the payment of all debts and expenses relating thereto, I dispose of the remainder of said Trust as follows:

"I give sixty per cent (60%) thereof to my niece, Dorothy Gantz, child of Thomas Gantz. If my said niece, Dorothy Gantz, is not living at the time of the death of the survivor of my said wife, Kathryn Gantz, my brother, Charles Gantz and my sister, C. Irene Gantz, then this 60% of this said Trust shall be given to the surviving child or children of the said Dorothy Gantz.

"Five per cent (5%) of the remainder of said Trust Fund I give to the Cemetery Association of the Schaefferstown Lutheran Church, of Schaefferstown, Lebanon County, Pa., the income thereof to be used for the perpetual care for the Gantz and Culp Cemetery blocks, and the excess of said income not needed for the aforesaid purposes shall be used for such other purposes as the said Association deems advisable.

"Twenty per cent (20%) of the remainder of said Trust Fund shall be given to the Lebanon High School, of Lebanon, Pa., the income thereof to be used to perpetuate the giving of awards to the members of the

graduating classes of said high school, similar to the awards which I had been giving during my lifetime.

"Ten per cent (10%) of the remainder of said Trust Fund shall be given to the Blind Fund of the Lions Club of Lebanon, Pa.

"Five per cent (5%) of the remainder of said Trust Fund shall be given to the Lions Club of Lebanon, Pa., and shall be used to defray the expenses of an annual picnic of the members of said Club, said occasion to be known as 'Lion Eddie's Day'."

Item 13 of said will further provides, as follows:

"Should my niece, Dorothy Gantz die without having any child or children surviving her at the time of the death of the survivor of my wife, Kathryn Gantz, my brother Charles Gantz and my sister, C. Irene Gantz, then the 60% of the remainder of the said Trust Fund given to her as aforesaid shall be given to the Blind Fund of the Lebanon Lions Club of Lebanon, Pa., and the Lebanon High School, of Lebanon, Pa., in equal shares."

The will of Decedent further provides, in item 14, as follows:

"Should the Lions Club of Lebanon, Pa., be disbanded and not in existence at that time then their one-half of said 60% of the remainder of said Trust Fund shall be given to the County Superintendent of Schools of Lebanon County, Pa., for the purpose of establishing a fund whereby the income thereof shall be given to a senior member of each of the High Schools of Lebanon County, Pa., in equal shares, for the purpose of enabling the said senior member of each of said high schools to pursue a higher education, the recipients of each of the said high schools to be selected by the teachers of the respective high schools who have taught the said recipients during their senior years in said respective high schools".

The will of decedent was signed, sealed and attested by decedent on June 29, 1950.

The property of decedent, located at 781 Cumberland Street, Lebanon, Pa., was appraised at $70,000 and consisted of a four-story building, of brick construction. The income being received at the time of the hearing from rents of this building was the sum of $6,600, being rent from a storeroom on the first floor, and rents from the second and third floors of the building.

The cost of the maintenance of Mrs. Gantz in the Wernersville State Hospital is between $65 and $70 per month and is being paid by the executor, as provided by the will of decedent.

At the time of hearing counsel for petitioner and executor filed an estimated recapitulation of the value of decedent's estate, which is as follows:

*Recapitulation*

| | | |
|---|---:|---:|
| Real estate appraised at | $86,200.00 | |
| Personalty not specifically bequeathed, | 12,957.28 | |
| Specifically bequeathed assets, | 16,604.79 | $115,762.07 |
| | | |
| Specifically bequeathed assets, | 16,604.79 | |
| Estimated debts and deductions, | 12,500.00 | |
| Estimated Pa. inheritance tax, | 10,000.00 | |
| Estimated Federal estate tax, | 9,900.00 | 48,104.79 |

Net Estate ..........................$67,657.28

To be placed in trust for widow for life with power to consume it entirely, plus income of trust fund.
Election against will has following result:

| | | |
|---|---:|---:|
| Real estate appraised at | $86,200.00 | |
| Personal estate appraised at | 28,562.07 | $114,762.07 |

*Less*

| | | |
|---|---:|---:|
| Estimated debts and deductions, | 12,500.00 | |
| Estimated Pa. inheritance tax, | 10,000.00 | |
| Estimated Federal estate tax, | 9,000.00 | 31,500.00 |

Net Estate .......................... 83,262.07
Widow's one-half share .......................... 41,631.03

Petitioner, inter alia, contends that this court, in exercising its discretion, should grant the prayer of the petition that the Peoples National Bank, as guardian for the widow, take against the will, for the reason that the will of decedent failed to properly provide for the widow, in that it only provided for the widow as long as she remained insane. This contention is based on the language used in paragraph 12 (e) of decedent's will which provides for the payment of the net income of the trust fund for the comfortable maintenance and support of the widow "to the persons or institution having the custody of my said wife".

The executor and other parties in interest contend that the will does amply provide for the widow, and that the income of the trust fund is not only to be paid to the widow during her insanity, but during her entire lifetime, and that if necessary, the entire principal of the trust fund can be consumed for the benefit of the widow, if the executor, in its discretion, finds this to be necessary, for the comfortable maintenance and support of the widow. The interest in the estate of decedent given to the widow under the will of decedent consists of the following: "Provides for her maintenance and support during the administration of the estate of the decedent (paragraph 6 of the will) ; provides for the payment of her burial expense and costs of a tombstone if she should die during the administration of her estate or thereafter (paragraphs 8 and 12 (c) of the will) ; creation of trust of realty situate at 781 Cumberland Street, Lebanon, Pa., (appraised at $70,000) and all the remainder of the estate for her benefit, which trust fund can be consumed in its entirety for her benefit if the trustee deems it necessary to so do (paragraphs 9 and 12 of will)."

Paragraph 12 (a) of the will of decedent reads as follows:

"During the lifetime of my wife, Kathryn Gantz, my said trustee shall pay all or such part of the net income derived from said trust fund as my said trustee may deem necessary for the comfortable maintenance and support of my said wife to the person or institution having the custody of my said wife".

The last twelve words in the sentence, namely, "to the person or institution having the custody of my said wife," are the only words in the entire will relating to the trust fund which can be said to possibly limit the interest of the wife in the trust fund to the period of her insanity.

In Keefer Estate, 353 Pa. 281, it was held:

"In seeking a testator's intention the Court should take into consideration the situation of the testator and the circumstances surrounding him at the time the will was executed".

In Parkin Estate, 157 Pa. Superior Ct. 476, it was held:

"In ascertaining the intention of the testator his will is to be construed as of the date of its execution . . . It must be read, and its meaning interpreted, in the light of the circumstances by which the testator was surrounded when he made it and by which he was very probably influenced, chief among which are the condition of his family, the natural objects of his bounty and the amount and character of his property".

It clearly appears from the testimony in this case that when decedent executed his will on June 29, 1950, the wife of decedent was approximately 57 years of age, and an inmate of the Wernersville State Hospital since December 10, 1948, or a period of approximately one and a half years. Decedent had no children and his wife had two children by a former marriage and a mother still living. Decedent had as the natural objects of his bounty his wife, a mother, Ida E. Gantz;

a sister, C. Irene Gantz; a brother, W. Charles Gantz, and a niece, Dorothy Gantz, all of whom were provided for in his will.

The law in Pennsylvania is well settled that:

"The intention which controls in the construction of a will is that which is manifest, either expressly or by necessary implication, from the language of the will, or, as is some times said, the testator's intention must be ascertained from the four corners of the will": Blair et al. v. Shannon et al., 349 Pa. 550.

We are of the opinion that the language used in the first sentence of paragraph 12(a) of the will clearly shows that testator intended to give the net income of the trust to his wife not only during her insanity but "during the lifetime of his said wife". The last sentence of paragraph 12(a) does not contain any limitation for the support and maintenance of his wife during her insanity but unqualifiedly provides that if. the net income is insufficient then the trustee can consume the entire principal of the trust fund if necessary for her comfortable maintenance and support. Paragraph 12(b) of the will does not contain any language which limits the payment of the net income for the benefit of the wife during her insanity but unqualifiedly states that if the net income is not entirely consumed for her benefit, the remainder shall be paid to his brother and sister. Paragraph 12(d) of the will states that "after the death of my said wife", the net income of the trust shall be paid to his brother and sister. Paragraph 12(e) of the will states that "after the death of the survivor of my said wife, Kathryn Gantz, my brother, Charles Gantz and my sister, C. Irene Gantz, . . . the trust shall be terminated . . .". Nowhere does testator provide that the widow shall receive the net income only during her insanity, but on the contrary states that it should be paid to her during her life.

In considering decedent's intention from the wording of his will, it has been held "in construing a will regard must be had to the whole scheme of the will": Fidelity-Philadelphia Trust Company v. Klinger, 162 Pa. Superior Ct. 294.

We are of the opinion that the intention of this testator under the scheme of distribution which he has clearly stated in his will was that his widow was to receive the entire net income of the fund, if necessary, for her comfortable maintenance and support, and furthermore, could consume the principal of the trust fund for such purposes if, in the discretion of the trustee, such action was reasonably necessary.

Therefore, we are of the opinion that this contention of the guardian petitioner cannot be sustained and that the contention of the respondent executor must be sustained under all of the evidence and circumstances in the proceeding before us.

Petitioner also contends that this court should grant the petition of the guardian to take against the will, under all of the circumstances before us; and secondarily, that if the petition to take against the will be not granted, that this court in this proceeding should award to the Peoples National Bank, of Lebanon, Pa., guardian of the widow, all of the income arising under the provisions of the will, for the benefit of the alleged weak minded person. We are of the opinion that this latter contention, namely, to award all of the income to the guardian, cannot be approved for the reason that the executor has not completed the settlement of decedent's estate and, therefore, has not transferred the corpus of the trust to itself, as trustee named to administer the trust under the last will of decedent. Further, inasmuch as the will provides that only so much of the income from the trust, as is reasonably necessary for the proper maintenance of said widow, shall be used in the discretion of the trustee, unless it

could be shown that the trustee is not properly making payments, in accordance with the provisions of the trust set up in decedent's will, no action could be taken by the court.

We will now discuss and dispose of the petitioner's second contention that the prayer of the petition of the guardian to take against the will on behalf of the widow should be granted.

In Harris Estate, 351 Pa. 368, 383, the court holds as follows:

"It is exclusively for the Court, which is the real guardian of the incompetent, to determine whether such an election should be made, and well defined principles have been laid down as guides for the exercise of its discretionary power. Chief among these is that the leaning of the law is toward the will; Kennedy v. Johnston, 65 Pa. 451, 454, 455; In re Bringhurst; Fidelity Trust Co.'s Appeal, 250 Pa. 9, 13, 95 A. 320, 321; Stockton's Estate, 311 Pa. 189, 191, 166 A. 648. The reason for this doctrine is that the intentions of a testator should not be defeated, unnecessarily, by judicial action, for every person, generally speaking, has the right to dispose of his estate according to his own wishes and therefore his will should be upheld as far as possible. It is common knowledge that not every widow disregards her husband's last wishes for the disposition of his property merely because she would obtain a greater quantum of his estate by so doing; sentiment enters into such situations quite as much as considerations of material advantage, and, if she is reasonably provided for in her husband's will or her wants are otherwise adequately supplied, it does not follow, just because such provision may not be as much as she might elect, that she would file an election to take against his will. Therefore, when the court acts on behalf of a mentally defective widow it should not be controlled by mere mathematical calculations

of the financial results that would accrue to her one way or the other.

"Another principle frequently stated is that, while the Court should base its decision on the consideration of all the circumstances, (Kennedy v. Johnston, 65 Pa. 451, 455; Stockton's Estate, 311 Pa. 189, 191, 166 A. 648; German's Case, 318 Pa. 200, 203, 178 A. 38, 40), the welfare of the widow is the main object of such consideration, and therefore the interests of her creditors or heirs who might either benefit or suffer by the choice to be made are almost wholly immaterial in the determination of the question. If the needs of the incompetent are satisfactorily provided for, the court should not authorize an election which would result in diverting the property of the deceased husband from his own heirs or legatee to those of his widow": Fidelity Trust Co.'s Appeal, supra, and other cases cited.

Under the facts and circumstances in the case before us, it is clear that decedent regarded his wife as the main object of his bounty and created a trust fund of the approximate value of $67,600. She was to receive the benefit of all the net income thereof necessary for her maintenance and support for the period of her natural life and, if necessary, the entire principle of the trust can be consumed for her benefit at the discretion of the trustee as to a reasonable necessity therefor. The most valuable asset of his estate, the premises situate at 781 Cumberland Street, Lebanon, Pa., in itself, has an annual net income of approximately $5,000 per annum; and in addition thereto the remainder of the estate is a part of the trust fund, of which again the wife is the primary beneficiary. It clearly appears from the testimony that she is 57 years of age, is suffering from an incurable disease of the brain whereby she has a life expectancy of only three years. At the time of hearing, the cost of the maintenance of the

widow in the State hospital was between $65 and $70 per month. It is clearly apparent that the income which she will receive under the will of decedent is amply sufficient to provide for her comfortable maintenance and support, and that if the cost thereof should be doubled or tripled there would be sufficient income to provide for the payment of her maintenance, and if necessary the principal of the trust could be devoted to such purpose. It further clearly appears from the evidence that after providing for the care and maintenance of his widow, decedent intended to provide for his own next of kin, namely, his sister, brother and niece, and certain charitable and educational institutions in which he had been deeply interested during his lifetime. To permit the guardian of the widow to file an election to take against the will of decedent would clearly defeat the intentions of testator and would result in a diversion of a substantial amount of the corpus of the trust to strangers of the blood of the testator.

In considering the evidence and circumstances presented to us in this proceeding, it is clear that the welfare of his wife was decedent's first consideration; that at the time the will was made he was conscious of the fact that his wife was confined in a mental health institution. This had continued for a year and a half prior to the time when he executed his last will; that he provided for her with the full understanding of the circumstances; and further, that the income, which he provided for under the will was amply sufficient to properly provide for her comfortable maintenance and support, and after her decease the trust estate is eventually to become vested in his next of kin and certain charitable and educational institutions in which he was interested during his lifetime. Wherefore, we are of the opinion that it would be an abuse of this court's discretion to grant the prayer of the

petitioner's petition to take against the will of decedent, which would result in a diversion of one half of the residuary estate from his next of kin to the next of kin of his wife.

After careful consideration of the law and the evidence, we make the following

### Order and Decree

And now, to wit, August 1, 1952, it is hereby ordered and decreed that the prayer of the petition of the Peoples National Bank of Lebanon, Pa., that it be permitted and directed to take against the will of J. Edward Gantz, decedent, on behalf of his mentally ill widow, is hereby denied. Costs of this proceeding to be paid by the estate of decedent.