## Dean's Appeal.

1. Undecided, whether the refusal of a court to order the removal of the committee of a lunatic is the subject of review by the Supreme Court. Nothing, however, but a very clear case could justify such intervention.

2. The facts of this case do not justify such intervention.

March 31st 1879.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Court of Common Pleas of *Wayne county* : Of January Term 1879, No. 195.

Appeal by John Dean and Catherine his wife, in right of the wife, a daughter and heir-at-law of Catherine Hoban, a lunatic, from a decree of the Common Pleas of Wayne county, on an application for the removal of H. C. Hand, committee of said lunatic.

The following are the material facts on which the application in the court below was founded :

At the commencement of the year 1869, Catherine Hoban, a widow of about eighty, her sons Patrick and James, and daughter Catherine, lived in the village of Hawley, Wayne county.   Patrick was married to a sister of Thomas Hennigan ; James never married ; and Catherine was married to John Dean.   James Hoban and Hennigan were partners in the mercantile business.

Patrick Hoban died in January 1869.   By his will he directed that his mother should have "a decent support" from his estate. The mother, who had previously lived with him, remained with his widow, Bridget A. Hoban, until sometime in 1872, when she went to live with her daughter, Catherine Dean.

In 1870 Hennigan died.   James Hoban remained in possession of the partnership property, and continued the business.   In June 1871, Bridget A. Hoban took out letters of administration on Hennigan's estate.   In September following, James Hoban died, without having made any settlement of the partnership accounts. Letters of administration on his estate were granted to Peter Walsh, a cousin of Hennigan and of Bridget A. Hoban.   Walsh neglecting to settle the partnership accounts, a suit was commenced against him in 1873, by direction of Attorney-General S. E. Dimmick, Mrs. Hoban's counsel.   Walsh, who lived in Luzerne county, accepted service of the writ, and on the part of the defence, F. M. Crane, Esq., appeared "for parties in interest;" but no further steps were taken in this action.

In December 1874, the administration account of Walsh was referred to H. M. Seely, Esq., as auditor.   On the hearing, no claim was presented by Bridget A. Hoban, as administratrix of Hennigan, and the auditor reported that "the accountant is charged with no part of Hennigan's assets."   She did appear in support of various individual claims, which had been allowed by the adminis-

[Dean's Appeal.]

trator, Walsh. The auditor rejected most of these, as unwarranted; at the same time reflecting severely on the transactions " between these cousins," as showing " a disposition to absorb the estate, and a want of good faith;" and on this ground he refused to allow Walsh any commissions, and surcharged him with the amount improperly allowed to Mrs. Hoban.

The auditor's report was filed in May 1875, but, on motion of Mr. Dimmick, was referred back for further testimony. In September the auditor filed a report, restating the account, and allowing some of Mrs. Hoban's claims, which he had previously rejected, and also the administrator's commissions. The balance in the accountant's hands, $3375.54, he distributed to Catherine Hoban, surviving parent of the decedent. This report was confirmed absolutely.

In 1874 and 1875, the Orphans' Court made orders for the payment of $1000 from the estate of Patrick Hoban, for his mother's support, pursuant to his will. In September 1875, the mother, being in her dotage, was found a lunatic, and F. M. Crane, Esq., was appointed her committee. In December following, an order was made for the payment of $50 a month from the estate of Patrick Hoban for her support, and this was regularly paid to her son-in-law, John Dean, with whom she lived. Mr. Crane also collected from Peter Walsh the money distributed to Catherine Hoban, and recovered for her James Hoban's interest in the partnership realty, with $440 mesne profits. He continued to act as committee until his death in January 1877. In March following, H. C. Hand was appointed committee. April 2d, he presented a petition, through G. G. Waller, Esq., his attorney, setting forth the receipt of moneys and property from the estate of James Hoban, the provision in the will of Patrick Hoban for his mother's support, and the orders of the court in the premises : " that since she came into the possession of the moneys and property above named, no change has been made, nor modification of the orders;" and praying the court " to make such order in the premises as they shall think just and proper; and if they decree the estate of Patrick Hoban to pay the whole or any portion toward her support, then to order and direct what sum monthly the executor of Patrick Hoban, deceased, shall pay to your petitioner; and such other and further order as shall to your honors seem proper."

On the same day the court ordered, " that the committee pay, out of any funds in his hands, and belonging to the said Catherine Hoban, in addition to the rent of the house she occupies, a sum not exceeding $20 per month, until the further order of the court."

This being construed by the committee as discharging the estate of Patrick Hoban until further order, the monthly allowance of $50 was no longer collected.

Meantime, Mr. Dimmick dying in October 1875, Bridget A.

Hoban employed G. G. Waller, Esq., as her attorney. In November 1875, an amicable action was entered at the suit of Bridget A. Hoban, administratrix of Thomas Hennigan, *v.* Peter Walsh, administrator of James Hoban; at December Term 1876 judgment was taken by plaintiff by consent, for $3500; in February 1877, without scire facias to bring in heirs, a sheriff's sale of Hoban's interest in the partnership realty, which Catherine Hoban had recovered, was made to Bridget A. Hoban, for $100, Walsh waiving inquisition; and in May following, the same realty was sold by order of the Orphans' Court, for the payment of this judgment, on the petition of Walsh, presented by Mr. Waller, and was bought by Bridget A. Hoban for $525. John Dean and wife filed exceptions, alleging that the judgment had been fraudulently confessed, and that no debt was then due from Hoban's estate to Hennigan's estate, and praying "that Bridget A. Hoban may be compelled to prove her said claim and judgment against the estate of said James Hoban, and that these petitioners may have opportunity to defend therein." The court, however, in September following, confirmed the sale absolutely. On appeal to the Supreme Court, this order of confirmation was reversed. (See Dean's Appeal, 6 Norris 24.)

Both before and after confirmation of this sale, Mr. Hand was urged by Dean to employ other counsel than Mr. Waller, and defend Catherine Hoban's interest. On one occasion Dean was accompanied by Cornelius Smith, Esq., an attorney residing in Scranton, who called on Mr. Hand "for the purpose of getting him to employ counsel to bring the case to the Supreme Court." Mr. Smith alleged "that this was a fraudulent judgment," and "unless the matter was brought up to the Supreme Court, the old lady would lose her whole estate." He "did not state to him, or explain the facts or circumstances which constituted the fraud in the case," but merely stated that "if the sale was confirmed, we could never get behind the deed to investigate this judgment." Mr. Hand, regarding the life-estate of a woman of ninety, in land which brought but $525, as too small an interest to justify protracted and expensive litigation, with no knowledge of the merits of the alleged defence, declined to use her funds for that purpose; especially as Mr. Smith held a judgment for $1000 against Catherine Hoban, John Dean and wife, and other heirs-at-law of James Hoban, entered on a note given September 2d 1872, for services to be performed in protecting their interests in James Hoban's estate. But alleging that Catherine Hoban had lost all capacity to contract when this note was given, Mr. Hand moved to open the judgment, and an issue to determine its validity as to her was pending when this appeal was taken.

In May 1878, Catherine Dean presented a petition, setting out the principal matters relating to the estate of Catherine Hoban, and praying for the removal of Mr. Hand from his office as com-

mittee. A rule was accordingly granted. On the hearing, in September following, the depositions of Messrs. Dean, Smith, Seely, Hand and Waller, and the records relating to the case, were read, and after argument the rule was discharged, whereupon this appeal was taken. The appellant assigned for error the refusal of the court to make the rule absolute and to dismiss the committee.

In February 1879, after the appeal was taken, Catherine Hoban, the lunatic, died.

*C. Smith*, for appellant.—The committee acted not in the interest of the lunatic, but in the interest of Bridget A. Hoban, and was controlled by her counsel. His employment of the counsel who was prosecuting a fraudulent claim against the estate, his refusal to take any step for the protection of Catherine Hoban's interests against that judgment, and his petition, on which the monthly allowance for maintenance was reduced from $50 to $20, and the estate of Patrick Hoban relieved from further payments, exhibit a want of good faith, and show " a transparent conspiracy to rob a helpless old lady out of her valuable estate, through and under the forms of law."

An appeal lies from a refusal to remove the committee. The discretion of the Common Pleas, is a legal discretion to be exercised " in watching over and providing for those who have been smitten in the seat of reason :" Black's Case, 6 Harris 434. It is subject to review. There is a distinction between the removal of a committee from an office in which he has no legal interest or estate, and a refusal to remove, which involves the rights of the lunatic and her protection against the unlawful acts of the committee.

*H. Wilson*, for appellee.—The decree of the Common Pleas, removing a committee, is not subject to review: Black's Case, 6 Harris 434. A power to remove at discretion, not subject to review, implies a like discretionary power to refuse to remove. It is difficult to see on what principle it can be held that an affirmative decision, on an application to remove, is within the discretion of the court, but that a negative decision is not. No sufficient cause for removal has been shown. Mr. Waller had been the committee's counsel for many years, and his position in representing a judgment prima facie valid, was not such as to make it improper to consult him. Cornelius Smith, Esq., was prosecuting a claim against the lunatic, which the court had pronounced prima facie invalid, yet he assumed to be acting in her behalf. If there was any defence to the alleged fraudulent judgment against James Hoban's estate, Mr. Smith was already employed as attorney to protect the interests of all concerned, and held a large judgment for his services ; and he and the heirs in remainder were more largely interested in making a defence than Catherine Hoban. No facts were communicated to the com-

[Dean's Appeal.]

mittee as the ground of defence. The committee, acting in good faith in the exercise of a sound discretion, decided that the lunatic's interest was too small to warrant him in using her money to employ additional counsel and engage in doubtful and expensive litigation.

The petition of the committee, on assuming office, merely set forth existing facts as he found them, and submitted all questions to the judgment of the court with no specific prayer.

The judgment of the Supreme Court was entered, May 5th 1879, . PER CURIAM.—The death of the lunatic, which has been suggested of record, makes the only question in this appeal one of costs. The functions and powers of the committee ceased with the life of the lunatic, leaving him liable to account to her administrator; and to remove him from the trust would now be a merely nugatory decree. He has already been removed by the act of Providence. It was decided in Black's Case, 6 Harris 434, that the committee of a lunatic was removable by the Court of Common Pleas at their discretion, and their order of removal was not the subject of review in this court. We do not decide that their refusal to make such order may not be reviewed; but we are very clearly of opinion that nothing but a very clear case would justify our intervention. We do not think that such a case was made out here.

Decree affirmed and appeal dismissed at the costs of the appellant.