## Crozier's Appeal.

The right given by statute to a widow to elect not to take under her husband's will is purely personal, and in the event of her death without having exercised said right, her heirs or personal representatives cannot make the election.

May 27th 1879.    Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Appeal from the Orphans' Court of *Juniata county:*  Of May Term 1879, No. 167.

Everard Oles died March 30th 1877, leaving an estate valued at about $60,000 and a widow, but no children or lineal heirs. He left a will, wherein the following provision was made for his widow: " It is my will and I order and direct that my beloved wife Mary, if she survive me, shall have the .net annual proceeds arising from my real and personal estate  * * *  so long as she lives." The widow died thirty-six days after her husband, on the 6th May 1877, intestate, and letters of administration on her estate were issued to B. F. Crozier, who, with Susanna Valentine, Elizabeth C. Westfall, James H. Crozier, Mary Foultz and Mary C. McWilliams, constitute the heirs-at-law and next of kin of the said Mary Oles, deceased.   On the 4th day of August 1877, these next of kin joined the administrator of the said Mary Oles in a petition addressed to the Orphans' Court, representing the facts above stated, and further averring that the said Mary Oles, deceased, had not in her lifetime accepted the provision made for her by her deceased husband in his will, nor was she at any time since the decease of her husband competent to make an election, because she was of unsound mind, and asking that they, as next of kin and the representatives of said Mary, be allowed, upon due notice to the parties in interest, to elect not to accept the provisions made for her by the will of her husband, and take what the statutes give in cases of intestacy.   After answer filed averring that the widow had in fact accepted the provisions of her husband's will, *in pais*, during her lifetime, and denying want of mental capacity, &c., the Orphans' Court directed an issue to be framed and sent into the Common Pleas for trial—which issue was as follows :

1. Whether Mary Oles elected to accept the devise and bequest to her under the will of said Everard Oles, deceased.

2. Whether she was competent, by reason of unsoundness of mind, to make an election to accept.   This issue was tried, and the jury found that she was of unsound mind, and had never made an election.   No measures were taken in the lifetime of the widow to have her declared a lunatic.

After hearing, the court, Junkin, P. J., dismissed the petition in an opinion saying :

[Crozier's Appeal.]

" The first question is, have the heirs and next of kin of Mary Oles the right, either for her or themselves, to waive the provisions of her husband's will and elect to take a distributive share of his estate under the statutes ? The right claimed is of first impression in this state: no reported case of similar claim is found in Pennsylvania, and many widows must have died within the year, without having made an election.

" The Statute of Wills, 8th April 1833, sect. 11, pl. 12 (Br. Purd. 1476), makes a devise or bequest by a husband to his wife a bar of her dower, unless the will declares otherwise, but provides that nothing therein contained shall deprive the widow of her choice, either of dower or of the estate or property so devised or bequeathed; and the Act of 11th April 1848, construing this section, admits her to a share of the personal estate of her husband under the intestate laws as well as his real, where she waives the provisions of the will, and repeats that the said widow may take her choice, and the Act of 29th March 1832 provides, that at any time after twelve months from the death of the testator, the Orphans' Court, on the application of any person interested in the estate of the decedent, shall issue a citation to any such widow to appear, &c., and make her election, &c., and if she neglects or refuses to appear, such neglect or refusal shall be deemed an acceptance of the devise or bequest, and a bar of dower.

" Dower at the common law, was a provision for a widow out of the lands or tenements of her husband, for support and the nurture of her children, and were it not for the statute giving her a share of her personal estate, there could be no controversy in this case; she had all the income of the real estate of her deceased husband while she lived.

" Now the statute (Act of 11th April 1848) which admits her to a share of his personal estate, only does so ' in case she elects not to take under the last will and testament of her husband.' The right of election is personal to her; it is not given to her heir or administrator. Her title comes by election; ' it is the election that hath obtained it.' There are no inheritable qualities in this right of election vested in the widow; it dies with her. It must have been known to the law-maker that widows often die within a year, or even within a few days after the decease of their husbands, and had it been intended that this right of election should continue after the death of a widow, it would have been easy to have said so. The intent of the law being to favor, comfort and provide for her, when she died there was no more need. If she died without electing, no choice was necessary, there would be no purpose to subserve. When a right grows out of an election, it cannot arise or come into existence until an election is actually made: W. S. v. Grundy, 3 Cranch 337.

" There is some authority on this point in other states. In
9 Norris—25

[Crozier's Appeal.]

Missouri, we have Welch *v.* Anderson, 7 Jones (or 28 Mo. 293), under a statute substantially like our own (R. Code, 1845, p. 430); it was held that the right of a widow was strictly personal and not transmissible by descent; and in Hamilton *v.* O'Neil, 9 Mo. 10, the same principle was held.     In the former case the widow died without having made an election and her heirs sought to make it, as heirs, but Scott, J., said there was no right or estate in her capable of descending to her heir.     In Sherman *v.* Newton's Ex'r, 6 Gray 307, under a statute which declares, 'When any man shall die, having lawfully disposed of his estate by his will, and leaving a widow, the widow may, at any time within six months after the probate of the will, waive the provision made for her in the will, and she shall in such case be entitled to such portion of the real and personal estate as she would have been entitled to if her husband had died intestate;' it was held in that case that although the widow had died within seven days after her husband, and before the probate of the will, and her heirs had made the application within six months, that the right of election must be exercised personally by the widow, and that the statute did not contemplate any advantage should be derived by the heirs from the privilege; and, accordingly, there was no provision or direction as to the time or manner in which, in any contingency, they should be allowed to avail themselves of it.     To the same effect is Pinkerton's. Adm'r *v.* Horace B. Sargent's Ex'r, 102 Mass. 568, under the same statute, but with these additional features, namely, that the widow had long been a lunatic, and confined in a hospital, and her right of election had been exercised by her guardian, as well as by herself, and the decision rests upon the ground that the privilege is so rigidly personal, that no one could exercise it for her, and being insane, she could not intelligently do so for herself.     Then there is Atherton *v.* Corlis, 101 Mass. 44, to same effect; and, also, Merrill's Adm'r *v.* Emery's Ex'r, 10 Pick. 507 ; Boone's Rep. *v.* Boone, 3 Harr. & McH. (Md.) 95; Collins's Adm'r *v.* Carman's Ex'r, 5 Md. 504, all coming to the same result, namely, that the right is personal to the widow.     On both reason and authority, it seems clear that the claimants in this case are not clothed with the personal privileges of their relative, Mary Oles, and cannot be permitted to exercise the right of election, and decline the provisions of her husband's will.

     " But the jury in the Common Pleas have found that Mary Oles was incapable of exercising her privilege of election for want of mental capacity, and how is the case affected by this fact ?     It is not to be doubted, that in this state, under the authority of Kennedy *v.* Johnston, 15 P. F. Smith 451, that whilst the court hold that the right is personal to the widow, yet, if she be incompetent to exercise it, it is not lost, nor shall it fail her, but the Court of Common Pleas will advise with her committee, elect for her, and.

[Crozier's Appeal.]

then record the election in the Orphans' Court. But where she dies before such election is made, how then? Is the case changed so that the same reasons which exclude the heir from exercising the right after the widow's decease, will not also exclude a court from doing the same thing? Is there a survivorship of the right in the one any more than in the other? Clearly not. The argument which excludes the heir, is, that the right of election does not survive the life of the elector. So long as the lunatic elector lives, the court, as guardian, is invested with the power of choice; but when the fountain dries up in death, all that has life in it dies also. In short, if no election is made by the widow during life when she is competent to act for herself, or by the court when she is not, the right is defeated in either case, the time and opportunity are past, and it never was intended that any election should be made after her death. It could do her no good, and the good of others was not in the view of the law-maker. That the law has been so understood and practised without challenge for the last century is apparent, from the fact, that a similar claim has never been made with sufficient zeal to establish a precedent."

From this decree, dismissing their petition, the petitioners took this appeal.

*Louis E. Atkinson* and *Ezra D. Parker*, for appellants.—It is claimed that this right of election by a widow is purely personal, and must be exercised by the widow herself; but it is a right coupled with an interest. It vested in the widow at the death of the husband, and her right ought not to be divested by death, insanity, or other cause, within the time fixed for the exercise of her right. The widow having died before she could exercise the right of election, it must of necessity be exercised by her representatives. If in this case the widow had made an election by declining the provisions of the will, and accepting of her share under the intestate laws, the right acquired by her in the property would pass to her representatives on her death. Where the widow, though enjoying during her life the benefits conferred by the will, was not shown to have elected as between the will and her dower, it was held that her next of kin might elect separately, some for and some against the will: Fytche *v.* Fytche, Law Rep., 7 Eq. 494, cited in Story's Eq., vol. 2, 11 ed., p. 376. Where a husband died intestate and his widow died intestate, without claiming dower in his estate, the representatives were entitled to provision in lieu of dower given by the estate: Douglass *v.* Clarke, 4 Dessaus. (S. C.) 143.

*E. S. & L. W. Doty*, for appellees.—The widow's representatives have no authority to make an election unless it is given to them by the express terms or by a fair interpretation of the Act of 11th April 1848. We contend that both reason and authority

clearly demonstrate that this right of election is a personal privilege of the widow, and that it cannot be exercised after her death by her representative, either with or without the sanction of the court. The evident purpose of the act was to benefit the widow, and not her representatives after her death. It is her personal right and is not transmissible by descent. The same principle has frequently been decided in our own state, although arising under other statutes. The right of a widow under the Act of 1851 to retain real or personal property of her husband's estate to the value of $300 is a personal privilege which she may waive, and the privilege is waived entirely if she neglect to demand an appraisement: Davis's Appeal, 10 Casey 256; Hufman's Appeal, 31 P. F. Smith 329; Frances's Estate, 25 Id. 222. So the remedy by distress incident to a widow's annuity ascertained by a proceeding in the Orphans' Court in partition under the intestate laws, is not one to which there can be any equitable subrogation. It is a personal remedy which belongs to the widow, and which she cannot use for the benefit of another who had previously paid the annuity to her: Shouffler *v.* Coover, 1 W. & S. 400.

The judgment of the Supreme Court was entered, June 9th 1879,

PER CURIAM.—We affirm the decree upon the opinion of the learned president of the court below.

Decree affirmed, and appeal dismissed at the cost of the appellant.