# Brooke's Estate.

*Wills — Election against — Weak-minded person — Refusal of guardian to elect against will.*

The guardian of a weak-minded person will not be compelled, at the instance of a son of such person by his first wife, to elect against the second wife's will, where it appears that the income from the life estate given to the husband by the will, will be greater than that which would accrue to him as the result of the election, and that the principal of the wife's estate which had come to her from her own family would be diverted from her blood to the sons of the husband by his first wife.

Argued January 9, 1924. Appeal, No. 26, Jan. T., 1924, by William Brooke, son and heir, from order of C. P. No. 2, Phila. Co., June T., 1920, No. 6782, refusing to direct guardian to elect against wife's will, in estate of John Brooke, a weak-minded person. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition to compel guardian of weak-minded person to elect against will of deceased wife of such person.

The opinion of the Supreme Court states the facts.

Petition dismissed.   William Brooke, son and heir, appealed.

*Error assigned* was order, quoting it.

*Geo. M. Henry,* for appellant, cited: Kennedy v. Johnston, 65 Pa. 451; Fidelity Trust Co.'s App., 250 Pa. 9; Com. v. Rife, 50 Pa. C. C. R. 22.

*Effingham B. Morris, Jr.,* of *Barnes, Biddle & Morris,* for appellee, cited: Fidelity Trust Co.'s App., 250 Pa. 9; Kennedy v. Johnston, 65 Pa. 451.

OPINION BY MR. JUSTICE SADLER, February 11, 1924:

On July 26, 1920, the wife of John R. Brooke presented a petition asking for the appointment of a guardian for his estate on the ground that he had become feeble-minded, and was unable to take care of his property.  The Girard Trust Company was appointed, as prayed for, and since that time has so acted.  Brooke, now eighty-five years of age, is still mentally defective, and is confined in the Friends Hospital at Frankford, Philadelphia, where all possible attention is given to him.  As a retired officer of the United States Army, he receives a pension of $6,000 per annum, and, in addition thereto, has personal property of $4,000, or more.  The cost of his support is $5,000 a year, and the allowance received from the government is more than adequate to meet this outlay.  In view of his advanced age, there is no likelihood of his restoration to a normal condition.

In 1916, his second wife made a will in which she disposed of her property, largely received from her own father and mother.  To her husband she gave approximately $15,000 in securities named, and provided that the income from the balance of her estate, which totaled

in all about $100,000, should be paid for his use during life, and thereafter the principal be held for her sisters. She died in 1921, and, later, one of the sons of General Brooke by his first wife demanded that the guardian elect to take against the will so that there would be payable to it one-half of the real and personal estate absolutely, in lieu of the testamentary provision made for him. The trust company refused to proceed as requested, and a petition was thereupon presented to the court of common pleas asking that it be directed to do so. After hearing, the court declined to thus order, on the ground that the income of Brooke was ample to supply all of his needs, without considering the additional benefits derived from the wife's estate. It further held that the contents of the will made in 1916, four years prior to the declaration of incompetency, were doubtless known to and approved by the husband (Robinson's Estate (Minn.), 93 N. W. 314), and that the estate of the wife was to be conserved for the benefit of her blood relatives, and not diverted to the ultimate use of the sons by the first marriage, which would be the result, unless the principal should be needed for the support of Brooke. Under the circumstances disclosed, such action was unnecessary, in view of his income, without considering the provision made by the testatrix.

As to the surviving husband, his comfort would be better promoted and secured by obtaining the income of the entire estate, after deducting the $15,000 expressly bequeathed to him, than the income from one-half, which would follow if the property was divided, and his share placed in the hands of the guardian. It is evident that, so far as the incompetent is concerned, the use of any principal will not be required. To take against the will would not aid him, but would alone accrue to the benefit of the stepsons, and could be effected only by overthrowing the expressed wish of the testatrix to favor her own blood as to the remainder.

The legal question involved has been clearly ruled in this State. That the guardian has no right to make such an election without the approval of the orphans' court which may, in its discretion, permit such action, if found to be to the interest of the incompetent, was early established: Kennedy v. Johnston, 65 Pa. 451. What was said in a like case by the present Chief Justice (Fidelity Trust Co.'s App., 250 Pa. 9, 14), where the weak-minded person was the wife, is appropriate here: "We agree that in cases of this character the first consideration is the welfare of the widow, and that the court is bound always to keep this in mind; but where, as here, the wife was confined in an asylum before the time of her husband's death, and he provided for her with a full understanding of the circumstances, furthermore, where it is found that the income which she will receive under the will is amply sufficient to provide for her comfortable maintenance and support, and after her decease the property is eventually to become vested in her grandchildren, we cannot say that, where the avowed purpose is to divert part of the property away from these grandchildren to the adopted children of certain of the testator's daughters, the court abused its discretion in refusing permission to take against the will, particularly where the widow, though possessed of long lucid intervals, during which 'her condition is normal,' has not, so far as the record shows, expressed any personal desire in the matter." See also, Van Steenwyck v. Washburn, 59 Wis. 483, 17 N. W. 289.

A careful examination of the reasons presented by the petitioner convinces us that the prayer was properly refused, and that the learned court below exercised, as was its right, a sound discretion in refusing to direct that an election against the will be made.

The assignment of error is overruled, and the decree is affirmed; costs to be paid by appellant.