### Ramsey's Executor et al. v. Ramsey.

(Decided March 25, 1932.)

BLAKEY, DAVIS & LEWIS and GAVIN H. COCHRAN for appellants.

WOODWARD, HAMILTON & HOBSON and W. J. COX for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On January 9, 1929, Nora Brown Ramsey, by her committee, Earnest Brown, filed this equity action in the Jefferson circuit court against Fidelity & Columbia Trust Company, executor of George W. Ramsey, deceased, and also against the widow, and the only surviving child of Roy D. Ramsey, deceased, who was a son of George W. Ramsey but who died before the death of his father. The petition alleged that George W. Ramsey and plaintiff, Nora Brown Ramsey, were married in Hopkins county, Ky., in 1887; that about six months after their marriage the wife became insane and was so adjudged upon inquest duly held, and was immediately confined in the Western Kentucky Insane Asylum at Hopkinsville, Ky., where she has continuously been since that time; that George W. Ramsey died in 1928 a resident of the city of Louisville, to which place he removed after the insanity of plaintiff, and that prior thereto he exe-

cuted his will in which he devised to plaintiff only the income from $4,000, and that the remainder of his property was devised to the widow of his deceased son and to her only child; that the Fidelity & Columbia Trust Company was made the executor of the will and trustee of the $4,000 trust fund for the benefit of the insane widow, and that the will had been duly probated.

Plaintiff asked for a settlement of the estate of George W. Ramsey, the extent of which, as averred in her petition, was unknown to her, and that she was incapable of ascertaining it, as she was also incapable of electing between the provisions made for her in the will, and her rights under the law as surviving widow in case of renunciation by her under the provisions of section 1404 of our present Statutes, and for which reason she prayed that the court make an election for her, since she was mentally incapable of doing so, and that it finally enter proper judgments and make appropriate orders for her protection and benefit, in compliance with the election that it might make in her behalf.

The answer chiefly relied on an alleged divorce from plaintiff, obtained by George W. Ramsey in the Hopkins circuit court in 1897, and which was procured by him on the ground of five years' separation without cohabitation. The second paragraph of the reply attacked the relied on divorce judgment upon the ground that defendant therein, and plaintiff here (Nora Brown Ramsey), was not legally before the court at the time the divorce decree was rendered. A paragraph of the rejoinder, in response to the attack made on the divorce decree in the reply, denied its averments and copied therein the summons that was issued in the divorce proceeding, together with the officer's return thereon, and averred that a guardian ad litem was duly appointed therein to represent the insane defendant, which he did, and that the court had jurisdiction of the person of defendant therein and that the judgment had never been modified, reversed, or in any manner set aside and was still in full force and effect.

A demurrer was filed to that paragraph of the rejoinder which the court carried back to the paragraph of the reply attacking the judgment and sustained it thereto, upon the ground that the attack was a collateral one, and, since it was not manifested that the record of the divorce judgment *affirmatively* showed the want of

jurisdiction of the plaintiff herein, and defendant in that action, the attack as such collateral one could not be sustained. The case then remained upon the docket, for some considerable time during which plaintiff and her committee, after notice given, appeared in the Hopkins circuit court and entered a motion therein to reinstate on the docket of that court the divorce case of Ramsey v. Ramsey, and to then set it aside, on the ground that it was void because defendant therein was not legally before the court. The Hopkins circuit court sustained that motion and set aside the divorce judgment, which was affirmed by this court in the case of Ramsey's Ex'r v. Ramsey, 233 Ky. 507, 26 S. W. (2d) 37.

The opinion in that case exhaustively considered and determined the rules of practice governing collateral as well as direct attacks of judgments and sustained the learned judge who considered this case in the Jefferson circuit court in holding that the attack made in the original reply herein upon the divorce judgment was a *collateral* one and could not be sustained under the allegations of the paragraph of the reply to which a demurrer was sustained. That opinion also held that the motion in the Hopkins circuit court to set aside the divorce judgment was a *direct* attack, and upheld the judgment of that court in sustaining that motion, upon the ground that the summons in the divorce judgment was not executed in the proper manner to bring the defendant therein and plaintiff here before that court so as to authorize the divorce decree upon which defendants herein first relied. After the rendition of our opinion in the 233 Kentucky case, an amended reply was filed in this one in the court below in which it was averred that the judgment of the Hopkins circuit court granting the divorce relied on by defendants had been duly set aside and was no longer in force. Thereupon defendants filed two amended answers alleging, in substance, (a) that although this action (praying, among other things, that the court elect for the plaintiff between accepting the provisions of the will of George W. Ramsey and renouncing it, thereby taking her widow's distributable share in his estate) was filed within less than a year from the time the will of the decedent was probated, yet, at the time of filing such answers, more than a year from that time had expired and that it was then too late for plaintiff herein, or any one for and on her behalf, including the court itself, to

make an election for her. Those pleadings also averred (b) that it would not be to the interest of plaintiff for her to renounce the provisions of the will and take in lieu thereof her distributable share of her deceased husband's estate; and, finally (c) that the court itself had no power or authority to make such election for her. The demurrers filed to such amended answers were sustained, and defendants declining to plead further, judgment was rendered renouncing the provisions of the will of George W. Ramsey for and on behalf of the insane plaintiff, and from that judgment defendant prosecutes this appeal. No questions are argued in brief except the designated defenses (a), (b), and (c), since the one interposed in the original answer (the divorce judgment) was eliminated from the case in the manner stated. We will, therefore, confine our discussion to the three defenses contained in the amended answers and dispose of them in the order named.

1. Defense (a) is to our minds so devoid of merit as to require but brief consideration. The petition, as we have already stated, expressly asked the court to make the election for and on behalf of the insane plaintiff, and also expressly prayed for that relief in the prayer thereto and which, we repeat, was done before the expiration of the year following the probate of the will, if indeed it is requisite for such an application to the court to be made within that time, but which we seriously doubt under the facts of this case. Having been so made at that time, the action of the court in making it necessarily related back to the date when the motion was made, which, no doubt, would have been done at the time had defendants not resisted it, and thereby deferred the action of the court on the motion until the expiration of the time fixed in the statute for such election or renunciation. Moreover, this court in the case of Smither v. Smither's Ex'r, 9 Bush 230, held that a court of general equity jurisdiction, upon application therefor duly made, will extend the statutory period within which the surviving widow may make such an election to enable her to acquaint and familiarize herself with the condition of her husband's estate and to become informed of the amount thereof for distribution, to the end that she might intelligently act with a full knowledge of her rights thus acquired, in making her election.

In the recent case of Brewer's Ex'r v. Smith, 242 Ky. 175, 45 S. W. (2d) 1036, the doctrine of the Smithers' opinion was reaffirmed. In each of those cases the widow was sui juris and capable of making an election for herself, except for her lack of information as to the condition of her husband's estate and concerning which she was ignorant. If, in such circumstances, the chancellor can extend the time for a sane widow to exercise her right of election, it would seem to necessarily follow as a logical consequence that the right of the court, if it possessed authority at all to make the election, could be exercised after it acquired the facts necessary to enable it to do so. Therefore, we conclude that defense (a) was properly disallowed.

2. Defense (b) is equally without merit. The developed facts are: That the personal property alone, owned and possessed by George Ramsey at the time of his death, was worth as much as $20,000, half of which would descend to the widow under our statutes of distribution, and which she would possess absolutely. The will devised her only the income from $4,000, and it requires no argument to show that it was to her financial interest to renounce her husband's will. The one whose beneficial interest is considered, in making such an election, is the one specified in the law giving the right, and not the interest of others having a right to participate in the estate. Thus we find that the learned author of Page on Wills (2d Ed.), vol. 2, p. 320, says: "Where the court elects for the beneficiaries by reason of their incapacity to make election, the court will look only to the benefit of those who are incapacitated to make the election, and will not consider what election will be beneficial to other parties in interest." Other authorities in substantiation thereof are unnecessary, since the conclusion is the only logical one that could be reached under any rule giving the right of election, and which is necessary for the benefit of the one to whom the right is given. It follows, therefore, that this defense was also properly denied.

3. In support of defense (c), we are cited to a number of cases in foreign jurisdictions, variously dealing with the questions of: (1) Whether an election may be made by a committee of the insane person when the statute allowing the election makes no such provision; (2) where a committee for an insane widow, conjointly with her heirs, or alone; or where the heirs of a sane

widow, attempt to exercise the right of election after her death which occurred within the prescribed limitations for exercising that right, but which she had failed to do while living; and (3) where an election was sought to be made by a committee for an insane person, or where he requested such an election by the court to which he applied, all in jurisdictions where the statute giving the right did not authorize it to be made by such committee, and where the declared rules of equity practice *denied* the right of such courts to make the election.

The cases so relied on are Sherman v. Newton, 6 Gray (Mass.) 307; Pinkerton v. Sargent, 102 Mass. 568; Jones v. Maguire, 221 Mass. 315, 108 N. E. 1073; Crozier's Appeal, 90 Pa. 384, 35 Am. Rep. 666; Crenshaw v. Carpenter, 69 Ala. 572, 44 Am. Rep. 539; and Clark v. Boston Safe Deposit & Trust Company, 116 Me. 450, 102 A. 289, L. R. A. 1918B, 384. The Massachusetts Supreme Court in the Sherman and Pinkerton Cases seems to have held that the right of election "is a purely personal one and must be exercised by the insane widow within the time prescribed by the statute, and if not done it is forever lost." Differently stated, it was held in those two cases that if an insane widow should not personally exercise her right of election within the prescribed time, her nonaction would constitute a waiver on her part and result in compelling her to accept the provisions in her favor contained in her husband's will, although they were wholly inadequate to provide for her absolute necessities. Indeed, the principle so announced would require her, though insane, to personally renounce her husband's will wherein all of his estate was devised to others and she was excluded entirely from any participation therein. It is, therefore, not astonishing that but few if any courts follow such a monstrous doctrine, and which the Legislature in that state later abolished by statute. On the contrary, many of the other cases cited by appellant's counsel expressly recognize the right of the proper equity tribunal to make such an election for an insane widow upon proper application for that purpose.

This court so declared in the cases of Harding's Adm'r v. Harding, Ex'r, 140 Ky. 277, 130 S. W. 1098, Ann. Cas. 1912B, 526, and Miller v. Keown's Ex'r, 176 Ky. 117, 195 S. W. 430, 433. But it is said that the hold-

ing to that effect in the Harding Case was dictum and that this court's expressions upon the question contained in that opinion were unnecessary for the determination of the appeal as presented by the record. If that contention should be accepted as true, it would still not destroy the logic of the dictum, nor eliminate its persuasive effect as being in accord with general equitable principles applicable to such situations. However, the question was squarely presented in the Miller Case and the alleged dictum in the Harding opinion was adopted therein as a part of our opinion in that case.

We have held in a number of cases, with none to the contrary, that in the absence of an election by a widow between taking a homestead right in her husband's realty, and taking dower therein, the court would elect for her, and we can discover no difference in principle between the two rights of election. Moreover, as stated in the Miller opinion: "The law is that insane persons, idiots, and others who are legally incapacitated are the wards of chancery courts, especially when they and their property are duly brought before the court for the purpose of administration, and that the court under those conditions may itself renounce the provisions of a will on behalf of such ward if it is to the ward's interest that the renunciation be made." In addition thereto, we have seen that this court held in its opinions in the Smither and Brewer Cases, supra, that the proper equity court, upon due application, would extend the time prescribed by the statute for a sane widow, who is capable of personally making her election, to do so, and, surely, if the chancellor may exercise that authority in order to enable one who is sui juris to intelligently elect, it would not be lacking in authority to itself elect for and on behalf of one who has no intelligence at all because of being hopelessly insane. If such a case is not one for equity to exercise its inherent guardianship of such wards it would be difficult to find one; and we are convinced that the learned trial judge in rendering the judgment appealed from properly exercised his jurisdiction in making the election complained of.

Wherefore, the judgment is affirmed.