## Beebe's Estate

Before Van Dusen, P. J., and Sinkler, Klein, Bolger, Ladner, and Hunter, JJ.

44

*William Alexander Hamilton,* for exceptants.

*Cuthbert H. Latta, Jr.,* of *Barnes, Dechert, Price & Smith,* contra.

BOLGER, J., May 12, 1944.—Two questions are presented: (1) Whether the reserved power to veto investments was suspended during settlor's incompetence? (2) If the power was suspended, what effect did the suspension have upon the trustee's power to invest?

The reservation was a power purely personal to the settlor. In Equitable Trust Co. v. Union National Bank et al., 18 A.(2d) 228, cited in the adjudication, the court pointed out in an opinion, supported by many English decisions and various textwriters, that the exercise of the power depends wholly upon the will of the donee, that it is in no sense an estate or a property right, and that it therefore cannot pass to anyone else upon the death or incapacity of the donee. Shelford on Lunatics, p. 120, states:

"If a power coupled with an interest, or a mere naked authority, devolves upon idiots or lunatics, it is in most cases suspended during the continuance of such disabilities; and therefore the committees of lunatics cannot execute powers given to lunatics, and, previously to the statute of 43 Geo. 3, c. 75, s. 3, powers of leasing could not be exercised by them—Lord Hardwicke held, that he could not authorize the committee to execute a power of leasing given to a lunatic; and put the case of a voluntary settlement made by a party before his lunacy, with a power of revocation, and that of a power to charge an estate with a sum of money; and

said that the committee could not execute such powers. Citing Ex parte Lord Bradford, Cas. tempore Hardwicke, by West, I vol. p. 133 . . . .

"Where a bare authority, to be exercised for the benefit of other persons, is given to a lunatic, it does not appear that it can be executed by his committee, or by any other person in his place; for, the statute authorizing the transfer of trust estates vested in lunatics does not extend to such a case."

It is true that certain rights such as the widow's application to take under or against a will are not suspended by the incapacity of the holder, but can be exercised on behalf of the holder by the court of appointment of the guardian or committee: Barclay-Westmoreland Trust Co. v. Dollar Savings Bank et al., 338 Pa. 421; German's Case, 318 Pa. 200; Bringhurst's Estate, 250 Pa. 9; Brooke's Estate, 279 Pa. 341; but such right is one of property and is not purely personal.

I Sharswood's Blackstone, ch. 1, "Of the Rights of Persons", states that rights are of two kinds: (1) "rights of persons", and (2) "rights of things". At page 122 appears a footnote wherein rights of things are subdivided into (1) rights to possess certain things, and (2) the right to do certain things. It is quite clear that the reservation in the instant case comes under the latter heading.

The reserved power is in essence an absolute one. Scott on Trusts, p. 975, comments as follows:

"If the holder of a power of control does not hold it in a fiduciary capacity, he cannot be controlled in the exercise of it."

From this it can be seen that the lack of authority extends to courts as well as to the settlor's guardian or committee. The personal aspect distinguishes it from a discretionary power which is subject to review. The settlor could refuse to assign any reason for approving or disapproving any investment. Her motive might be

capricious or even fanciful, yet it could not be reviewed. It is clear, therefore, that during her incompetence the power was suspended.

Did the suspension of the settlor's control or of the trustee's power to invest operate to reduce the trustee's power to that of the common-law power to invest in legals only, or did it leave the trustee's power, as stated in the deed, completely unimpaired? It is insisted that if the settlor intended the trustee to retain its complete power during any incapacity of the settlor she would have so stated in the deed. The auditing judge's observation that her veto power applies to both legals and nonlegals is most pertinent. In fact, the power applies to all acts of investment, not merely to types or kinds of investment. Therefore, if its suspension affects the trustee's power to invest at all, it must result in its complete extinguishment, not in a mere reduction of it. So, when exceptant admits that the trustee retained the power to invest in legals, he inferentially admits the power to invest in anything the deed authorizes.

The deed reveals the grant of unusually broad powers of investment to the trustee, displaying the reposing of great confidence in its discretion. There is, in addition to the power to invest in nonlegals, authority to retain and to invest in real estate. To hold that this expression of confidence in the trustee and the unusual grant of powers to it were to be limited by the settlor's inability to exercise her power to approve or consent to investments, when she did not so provide in the deed, would be, we believe, misconstruing her intention. We agree with the conclusion of the auditing judge that the deed, read from its four corners, should be interpreted to empower the trustee to act without her concurrence when, for any reason, she was unable to express herself.

The exceptions are dismissed and the adjudication is confirmed absolutely.