### Strecker Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

*Edward M. David* and *Anderson Page*, of *Saul, Ewing, Remick & Saul*, *Philip A. Bregy*, of *MacCoy, Evans & Lewis*, and *Charles Morris Hamilton*, for preliminary objections.

*Alfred M. Klein*, contra.

SHOYER, J., May 20, 1960.—This matter comes before the court en banc on preliminary objections to the petition of the administrator of the widow's estate for leave to take against decedent's will. The objections are threehold, raising questions of law, jurisdiction and capacity to sue. In our opinion they are all well taken.

It will be noted that the pleadings are filed in the estate of Dr. Edward A. Strecker who died testate on January 2, 1959. Shortly thereafter, on February 5,

1959, his surviving spouse, Elizabeth Walsh Strecker, was adjudicated an incompetent and The First Pennsylvania Banking and Trust Company was appointed guardian of her estate. She died on November 19, 1959, and letters of administration were issued by the register of wills to her brother, her next of kin.

Dr. Strecker's will gave his widow the entire income from an estate of $320,000 (less five legacies totaling $3,700), with power in the trustees to use "so much of the principal as my trustees in their sole and absolute discretion may deem necessary for her comfort, maintenance and support". Paragraph ninth further provides:

"My Trustees, in the exercise of their discretion to use principal of the trust on behalf of my wife, Elizabeth Walsh Strecker, shall bear in mind that she will have assets of her own in the form of cash and securities which shall be first exhausted before any of the principal of the trust under this my Will is used for her comfort, maintenance and support."

Letters testamentary were granted to the Provident Tradesmens Bank and Trust Company and Anderson Page, the latter being a member of the law firm of Saul, Ewing, Remick and Saul.

The parties, who were childless, were living together at the death of Dr. Strecker. His widow became entitled to her family exemption and, in addition, upon an election to take against decedent's will, to one-half of testator's estate: Wills Act of April 24, 1947, P. L. 89, sec. 8(b), 20 PS §180.8(b).

Since the same legal counsel represented both the executors and the guardian, it became necessary for the guardian to choose other counsel for the purpose of presenting a petition to the court of its appointment for leave to take against Dr. Strecker's will. This was done and the petition, when prepared by the new counsel, was returned to the latter after execution by the

guardian, via the latter's original counsel. Thus counsel for the executors had knowledge of the proposed petition and its contents. Before the petition could be presented to this court, which had appointed the guardian, Mrs. Strecker died.

The present petition is by the administrator of the deceased ward's estate for a citation against the executors, trustees and all the residuary beneficiaries of Dr. Strecker's estate, to show cause why petitioner should not be permitted to file an election on the widow's behalf nunc pro tunc. A guardian and trustee ad litem was appointed to represent minors and persons now unborn or unknown among the residuary legatees. Separate answers raising preliminary objections to the petition were filed by the executors, by the guardian and trustee ad litem and by the principal residuary legatee.

That statutory law prohibits the granting of petitioner's request there can be no doubt. The Wills Act of April 24, 1947, P. L. 89, 20 PS §180.8, as amended, in section 8(a) creates this right of election and extends the privilege only to "the surviving spouse while living." Section 11 provides that "the spouse's election shall be in time if [made] within one year after the probate of the will". Section 12(a) provides that failure to make a timely election "shall be deemed an election to take under the will or an acquiescence in the provisions thereof", and section 12(b) states clearly and precisely: "Personal right. The right of election shall be personal to the surviving spouse and shall not be exercised after his death." The appended comment of the Joint State Government Commission is pertinent:

"This subsection is declaratory of existing case law, and will prove helpful to persons examining the act. This subsection will not interfere with the right of the common pleas court to direct the election which shall

be made by the guardian of an incompetent surviving spouse."

It was after the enactment of the Wills Act that the orphans' court was given jurisdiction over the estates of incompetents. By the Act of July 28, 1953, P. L. 690, amending section 302 of the Orphans' Court Act of August 10, 1951, P. L. 1163, 20 PS §2080.302, this jurisdiction was made concurrent with the court of common pleas, and by the further amendment of July 11, 1957, P. L. 791, jurisdiction of future incompetents' estate cases was made exclusive in the Philadelphia Orphans' Court. Thus it was to this court, under the number and caption of the incompetent's estate, that the ward's guardian was preparing to present its petition for leave to take against her deceased husband's will.

Case law for over a century has held that the *absolute* right of election under similar wills statutes was lost to the surviving spouse by adjudication of her incompetency just as emphatically as by her death: German's Case, 318 Pa. 200. However, the duty of petitioning the court of the guardian's appointment for leave to elect then devolves upon her guardian, for he lacks the power to make the election himself. This right which falls upon the guardian differs fundamentally from the right which he has to take immediate possession of her property, real and personal, and to manage the same in her behalf: Kennedy v. Johnston, 65 Pa. 451, 455. Instead of possessing rights of ownership, the guardian is faced with a problem requiring "judicious consideration—one of judgment to be exercised upon a view of the circumstances. . . . The election of one of two things when only one can be chosen for the lunatic, is undoubtedly a judicial not a ministerial act, and belongs to the court and not to the committee": Kennedy v. Johnston, supra, 455. The

law under which the guardian was appointed does not cloak it with the requisite authority.

In Harris Estate, 351 Pa. 368, 382, the law and the authorities on this subject were reviewed, the court saying: "It is firmly established that the committee of a lunatic or the guardian of a weak-minded person cannot elect on behalf of the ward to take against the will of the latter's spouse unless empowered to do so by the court. . . . It is exclusively for the court, which is the real guardian of the incompetent, to determine whether such an election should be made, and well defined principles have been laid down as guides for the exercise of its discretionary power."

Here our court had had no opportunity to act on the guardian's petition because it had not been filed with us prior to the death of the ward. Nor could our authority be delegated to the guardian to act without our permission first sought and obtained: Arnold's Estate, 249 Pa. 348; Gerlach's Estate, 127 Pa. Superior Ct. 293. In the latter case the guardian had filed an election without first obtaining the decision of the court. In a subsequent attempt by the guardian to have the election approved by the court nunc pro tunc, it was held that the court's "discretionary power" to elect terminated with the ward's death and could not be exercised thereafter.

The statement by the court in Crozier's Appeal, 90 Pa. 384, 387, is most pertinent: "So long as the lunatic elector lives, the court, as guardian, is invested with the power of choice; but when the fountain dries up in death, all that has life in it dies also. In short, if no election is made by the widow during life when she is competent to act for herself, or by the court when she is not, the right is defeated in either case, the time and opportunity are past, and it never was intended that any election should be made after her death. It

could do her no good, and the good of others was not in the view of the law-maker."

The discretion to be exercised by the court should be in favor of the widow whenever necessary for her maintenance, comfort and welfare, but the testamentary dispositions of her deceased spouse should not be lightly and recklessly set aside merely to accumulate an estate for the survivor's heirs or creditors. As surely as death supplies the final answer to all her needs, so does it just as inexorably terminate the court's discretion. Without a need to be satisfied, there can be no discretion to be exercised. As stated by the court in Harris Estate, supra, 384: ". . . the welfare of the widow is the main object of such consideration, and therefore the interests of her creditors or heirs who might either benefit or suffer by the choice to be made are almost wholly immaterial in the determination of the question. If the needs of the incompetent are satisfactorily provided for, the court should not authorize an election which would result in diverting the property of the deceased husband from his own heirs or legatee to those of his widow: [citing cases]."

We glean from the pleadings before us that it is only the zeal of the widow's brother to divert the stream of her deceased husband's testamentary dispositions to petitioner's own personal advantage that would have been served by an election against this decedent's will. What considerations could possibly have moved this court to decide on claiming one-half Dr. Strecker's estate outright, when the entire estate by the very testamentary provisions could have been devoted to the widow's actual needs? Certainly not Mrs. Strecker's welfare. It is true that mere mathematical calculations alone should not determine the court's decision: Harris Estate, supra, 383. But even such calculations, after making due allowance for the

Federal estate tax, would favor the ward's guardian taking under this will and not against it.

The guardian's delay for nine months in presenting the petition did not harm its ward. Her needs in the meantime were being fully met out of her own very sizeable estate ($165,000). The guardian still had three months before the end of the statutory year in which to present its petition, for only the spouse's death, not her incompetency, could shorten this period. Regardless of the reason for waiting, the guardian was fulfilling its duty in preparing to present the petition to this court when Mrs. Strecker died. It could do no more. It could not elect for her, because, as quoted above, the court was her "real guardian" and no decision to elect had yet been made. Consequently there is no merit in petitioner's contention that possession by the attorney for the executors of the petition with the unsigned decree attached was an effective compliance with section 11(1) of the Wills Act which provides that the election is in time if delivered to the attorney for the estate within the year. The petition which passed through the hands of counsel for the executors was neither the personally executed election of a competent spouse required by section 10, nor the effective court decree contemplated by case law in those situations where the spouse is incompetent.

We are also satisfied that this court lacks authority to entertain the present petition, presented, as it is, to the number and caption of decedent's estate. In Mallon's Estate, 253 Pa. 29, relied on by this petitioner, the surviving spouse had made the election prior to his death. All that was left for his personal representative to do was to seek the court's decree confirming the appraisement and setting apart of the property to him. This was a ministerial act, well within the authority of the personal representative, and the petition was presented to the orphans' court which

had unquestioned jurisdiction over the dispute. The surviving spouse had elected prior to his death and no incompetency was involved. So also in Buckland's Estate, 239 Pa. 608, 613, where it is expressly stated that the election could not be made by the administrator of the estate of the deceased surviving spouse.

The preliminary objections are sustained and the petition is dismissed.