Peden Estate.

Argued October 10, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and KEIM, JJ.

reargument refused December 5, 1962.

*Morris A. Mendlowitz*, for administrators.

*Robert W. McWhinney*, with him *Goehring and Mc-Whinney*, for executor and trustee of decedent's widow.

OPINION BY MR. CHIEF JUSTICE BELL, November 13, 1962:

John Peden died March 6, 1961; letters testamentary on his will were issued to Pittsburgh National Bank.

Peden's will, which he executed on October 31, 1957, provided, inter alia, as follows:

"Second: I specifically devise to my Trustee hereinafter named the following particular pieces or parcels of real estate which I hold as tenant by the entireties with my wife, BELLA PEDEN, with the intent and purpose of putting my said wife, BELLA PEDEN, or her guardian as the case may be, *to her election**\* of accepting her share under this my Last Will and Testament, or declining the benefits to her under this my Last Will and Testament and accepting only her intestate share, it being my belief that her interests will be better served by receiving *all of my estate* as the corpus of a Trust for her benefit than it would be to receive a fee in a portion of my estate, under circumstances existing as of the date of this Will:

"(A)  My residence at 4031 Davis Avenue erected on Lots 4019 and 4020 in the Homestead Park Plan, Borough of Munhall, Allegheny County, Pennsylvania.

"(B) The premises at 109 West Virginia Avenue, Munhall, Pennsylvania, erected on Lots 1945, 1946 and 1947 in the Plan, Borough County and State aforesaid."

Testator then gave in the fourth paragraph of his will his residuary estate in trust "to distribute all of the income, *and so much of the principal* as may in its discretion be needful, for the proper and comfortable maintenance, care and welfare of my beloved wife, Bella Peden . . . for her natural life assuring, insofar as is possible, adequate medical and other care . . . without regard to preservation or principal . . ." with a gift at his wife's death of the income and the principal to

---

\* Italics throughout, ours.

his nephew, John Sterling Peden who, the testator stated, had "been reared by my beloved wife, Bella Peden, and me as though he were our son."

The testator's wife, Bella Peden, had become mentally incompetent in April, 1956, but was not so adjudicated until May 28, 1961, at which time Peoples Union Bank and Trust Company was appointed guardian of her estate. On June 21, 1961, *without authority of the Orphans' Court,* the guardian elected, by a letter to the executor, to take against the will. Bella Peden died July 16, 1961. After her death, the guardian of her estate filed the election to take against Peden's will in the office of the Register of Wills and recorded it in the office of the Recorder of Deeds on September 21, 1961.

On August 28, 1961, John Peden's executor filed a supplemental inventory which included the two aforesaid entireties-properties, and thereafter filed an Account.

Peden's executor and trustee had previously obtained a citation directed to the guardian of the estate of Bella Peden and the administrators and heirs of Bella Peden to show cause why they should not convey to it the legal title to the two aforesaid pieces of real estate, and also render an accounting of the rents and profits. The issue raised by the citation was heard at the audit of the account of Peden's executor.

The Orphans' Court entered a Decree which confirmed absolutely the executor's Account and ordered distribution in accordance with the Schedule of Distribution which awarded (1) under Schedule A "To Pittsburgh National Bank, Trustee of the estate of John Peden, deceased, for the purposes set forth in the will . . . balance of $32,353.73," and (2) under Schedule B "to Daniel Young and William Young, administrators and sole heirs of the estate of Bella Peden, deceased," the two aforesaid (entireties) premises which

were appraised at $23,000. Both John Peden's trustee and Bella Peden's administrators and heirs, appealed to this Court.

The Decree must be affirmed.

Bella Peden's heirs and administrators contend that the election to take *against* John Peden's will which was filed by the guardian of her estate was valid. There is no merit in this contention. Since the election was filed by Bella's guardian in Bella's lifetime *without the authority of the Court,* it was a nullity; after Bella Peden's death the Court could not authorize or direct the guardian of her estate to file an election to take against or under his will: *Harris Estate,* 351 Pa. 368, 41 A. 2d 715; *Arnold's Estate,* 249 Pa. 348, 94 A. 1076; *Gerlach's Estate,* 127 Pa. Superior Ct. 293, 193 A. 467; Sec. 12(b) of the Wills Act of 1947.*

In *Harris's Estate,* 351 Pa., supra, the Court said (pp. 382, 383, 384) : "It is firmly established that the committee of a lunatic or the guardian of a weak-minded person cannot elect on behalf of the ward to take against the will of the latter's spouse *unless empowered to do so by the court*: Kennedy v. Johnston, 65 Pa. 451; Arnold's Estate, 249 Pa. 348, 363, 94 A. 1076, 1081; Brooke's Estate, 279 Pa. 341, 344, 123 A. 786, 787; Stockton's Estate, 311 Pa. 189, 166 A. 648; German's Case, 318 Pa. 200, 178 A. 38; Gerlach's Estate, 127 Pa. Superior Ct. 293, 300, 301, 193 A. 467, 470, 471. It is exclusively for the court, which is the real guardian of the incompetent, to determine whether such an election should be made, and well defined principles have been laid down as guides for the exercise of its discretionary power. . . .

". . . while the court should base its decision on the consideration of all the circumstances (Kennedy v. Johnston, 65 Pa. 451, 455; Stockton's Estate, 311 Pa.

---

* P. L. 89, 20 P.S. §180.12.

189, 191, 166 A. 648; German's Case, 318 Pa. 200, 203, 178 A. 38, 40), the welfare of the widow is the main object of such consideration, and therefore the interests of her creditors or heirs who might either benefit or suffer by the choice to be made are almost wholly immaterial in the determination of the question. If the needs of the incompetent are satisfactorily provided for,* the court should not authorize an election which would result in diverting the property of the deceased husband from his own heirs or legatee to those of his widow: In re Bringhurst; Fidelity Trust Co.'s Appeal, 250 Pa. 9, 14, 95 A. 320, 321; Brooke's Estate, 279 Pa. 341, 343, 123 A. 786, 787; Stockton's Estate, 311 Pa. 189, 166 A. 648; see also Miller's Estate, 9 D. & C. 657."

Section 12(b) of the Wills Act of 1947, supra, provides: "The right of election shall be personal to the surviving spouse and shall not be exercised after his death."

In *Arnold's Estate*, 249 Pa., supra, the Court said (page 363) : ". . . The guardian could not make an election without the direction of the court empowering him to do so: Kennedy v. Johnson, 65 Pa. 451. We have adverted to the fact that the guardian had in pursuance of instructions by the Court of Common Pleas declined to take under the will, but subsequently the court in effect revoked that order and directed the guardian to await the final determination of the question and litigation as to whether the charitable legacies were void or not before the election was made. The appellee contends that no election was made by the guardian during the lifetime of his ward, and, therefore, *no election can now be made by him to take against the will. This is correct:* Buckland's Est., 239 Pa. 608, 613; Jackson's App., 126 Pa. 105. At the time this appeal

---

* They were more satisfactorily and adequately provided for than if she had taken against the will.

was taken Mr. Arnold was still alive but it appears by the appellee's brief that he died January 28, 1915. *The presumption, after his death, is that Mr. Arnold took under the will, and he must be regarded as having done so:* Crozier's App., 90 Pa. 384; Jackson's App., 126 Pa. 105, 108; Geist's Est., 193 Pa. 398, 400. It follows that the interest given Mr. Arnold by his wife's will will merge with the absolute interest given him under the intestate laws in that part of the estate as to which there is an intestacy: Kane's Est., 185 Pa. 544; Conley's Est., 197 Pa. 291; Moore v. Deyo, 212 Pa. 102."

In *Gerlach's Estate,* 127 Pa. Superior Ct., supra, the Court said (pages 301-302) : ". . . The functions and powers of a guardian or committee cease with the life of the incompetent; there remain only the duty and liability to account. Dean's Appeal, 90 Pa. 106; 32 Corpus Juris, p. 693, §383; Young's Adoption, 259 Pa. 573, 103 A. 344; Stobert v. Smith, 184 Pa. 34, 38 A. 1019.

"The guardian of the estate of Andrew H. Gerlach had no statutory power to elect to take against the will of its ward's spouse. It could act only as directed and empowered by the court. Kennedy v. Johnston, supra; Arnold's Estate, 249 Pa. 348, 363, 94 A. 1076. No such action was taken during the lifetime of the ward. If no such election was made during the lifetime of the ward, *no election to take against the will could be made thereafter.* Upon the death of the ward the guardian's authority to proceed ceased. Young's Adoption, 259 Pa. 573, 576, 103 A. 344.

*"And likewise upon the death of the ward the power of the court to elect terminated.* Only so long as the ward lived was the court as guardian vested with the power of choice (German's Case, supra), and such discretion must be exercised judicially on due consideration of the advantages and disadvantages of the choice to the ward (Kennedy v. Johnston, supra). In Crozier's

Appeal, 90 Pa. 384, at page 387, it was said: 'So long as the lunatic elector lives, the court, as guardian, is invested with the power of choice; but when the fountain dries up in death, all that has life in it dies also. In short, if no election is made by the widow during life when she is competent to act for herself, or by the court when she is not, the right is defeated in either case, the time and opportunity are past, and it never was intended that any election should be made after her death. It could do her no good, and the good of others was not in view of the law-maker.'

". . . *After the ward's death no action as to an election was within the power of either court or guardian.*

"In the instant case the court below sought to do, in effect, after the ward's death, that which it had the discretionary power to do only during the ward's lifetime. Hence its decree approving and affirming nunc pro tunc the act of the guardian was without effect and invalid.

"Nor can the court's nunc pro tunc order now serve to supply the non-action during the life of the ward, or to supply an order of election which it might have made, after consideration of all the circumstances and with a view primarily to the interest and welfare of the ward himself, prior to the ward's death. The court below had no such discretionary power as it attempted to exercise."

It is clear that (1) the guardian's election on behalf of the incompetent to take *against* the will of her husband—by letter in her lifetime and by written recorded election after her death—was a nullity and (2) the Court had no power to exercise, authorize, approve, direct or confirm an election after Bella's death.

What is the practical and legal result of all of these very unusual circumstances?

Section 12(a) of the Wills Act of 1947, supra, provides:

"Failure to make an election. . . . failure to make an election in the manner and within the time limits set forth in section 11 hereof shall be deemed an election to take under the will or an acquiescence in the provisions thereof." There was no evidence which was adequate in law to overcome this presumption, viz. an election to take under the will what was validly given her therein.

It is hornbook law that a testator's intent must prevail, but only if it is valid and not against the law or against public policy: *Woodward Estate,* 407 Pa. 638, 182 A. 2d 732; *Lewis Estate,* 407 Pa. 518, 180 A. 2d 919; *Burleigh Estate,* 405 Pa. 373, 175 A. 2d 838; *Dinkey Estate,* 403 Pa. 179, 168 A. 2d 337; *Cannistra Estate,* 384 Pa. 605, 121 A. 2d 157, and cases cited therein; *Althouse Estate,* 404 Pa. 412, 172 A. 2d 146; *Little Estate,* 403 Pa. 534, 170 A. 2d 106.

Premises 4031 Davis Avenue and premises 109 West Virginia Avenue were owned as tenants by the entireties; as the result of this tenancy and John Peden's death, Bella Peden, the surviving spouse became vested with a fee simple interest in these properties, not by her husband's will but by operation of law. Moreover, as this Court said in *Williams Estate,* 349 Pa. 568, 37 A. 2d 584 (pages 569, 570) : "A testator has no power of disposition of property held by him and his wife by the entireties. The law fixes the absolute title therein immediately upon his death, and he could not dispose of what was not his own and where the law placed ownership in someone else."

The *general rule* is that a testator may condition his legacy; he may even condition his legacy on the election of his surviving spouse to take under or against his will: *Schmick Estate,* 349 Pa. 65, 70, 36 A. 2d 305; *Carr's Estate,* 138 Pa. 352, 22 A. 18; *Mohn's Appeal,* 76 Pa. 92. However, this general rule is subject to a number of exceptions, one of which is that such

condition cannot be based upon an election to give up the spouse's own property, or in the alternative take against his will.

It is, we repeat, clear (a) that the guardian of the estate of the incompetent, Bella Peden, could not elect to take against her husband's will without the approval of the Court, and (b) that the Court could not authorize or direct the guardian to file an election after Bella's death, and (c) the properties owned as tenants by the entireties passed by operation of law to the surviving tenant, Bella Peden, in fee simple, and (d) the law presumes that in the present circumstances Bella Peden took under her husband's will whatever interests he therein validly gave her, and (e) testator John Peden could not compel his wife or her guardian to elect to take property which belonged to her and not to him, plus other gifts under his will or in the alternative to take against his will.

Appellants seek to invoke the doctrine of *equitable* election and contend that the two aforesaid elections to take against the will, even if invalid, constituted a renunciation of the provisions made for Bella in her husband's will. We are of the opinion that the doctrine of equitable election has no application in this case and in no event could constitute in law a renunciation by Bella of the valid provisions which her husband made for her in his residuary trust.

To summarize: (1) Bella Peden became, by operation of law, vested at her husband's death with a fee simple title in the two properties hereinabove mentioned, which thereafter went to her heirs under her will; and (2) Bella Peden took under the aforesaid presumption, all the other gifts and interests which her husband validly bequeathed to her in his will; and (3) John Peden's nephew is entitled to the income and principal bequeathed to him in accordance with the terms of Peden's residuary trust.

Decree affirmed; each party to pay own costs.